STATE EX REL. ELFERS, Respondent, v. OLSON, Appellant.

*January 7—February 2, 1965.*

For the appellant there was a brief by *Heide, Sheldon, Hartley & Thom* and *W. Scott Thom,* all of Kenosha, and oral argument by *W. Scott Thom.*

For the respondent there was a brief and oral argument by *Gerald T. Flynn* of Racine.

WILKIE, J. In essence the trial court ruled that, on the facts alleged in the complaint, the assembly action on Resolution 9, A., was an unconstitutional attempt to remove Elfers from the assembly seat he had already taken and not the settlement of a contest over who was the duly elected assemblyman from the second Kenosha district.

Three issues are presented on this appeal:

1. Do the facts alleged in the complaint present a controversy over which the courts have jurisdiction?

2. In adopting Resolution 9, A., was the assembly attempting (a) the removal of a member, or (b) the settlement of an election contest?

3. If the resolution was an attempt to settle an election contest, do the courts have jurisdiction to review the assembly's action?

Addressing ourselves to these issues, we should first note that, as in *State ex rel. La Follette v. Kohler* [1] "[w]e are dealing here with laws which operate in the political field,—a field from which courts are inclined to hold aloof,—a field with respect to which the power of the legislature is primary and is limited only by the constitution itself."

Issue 1. *Do the facts alleged in the complaint present a controversy over which the courts have jurisdiction?* Sec. 7, art. IV of the Wisconsin constitution provides that, "Each house shall be the judge of the elections, returns and qualifications of its own members; . . ." Appellant contends that the courts have no jurisdiction to review any action by the

---

[1] (1930), 200 Wis. 518, 545, 228 N. W. 895.

assembly which settles an election contest involving one of its members.

To reach consideration of this contention it is first necessary to determine whether the complaint does constitute an attempt to achieve court review of an election-contest decision by the assembly. As alleged in the complaint, respondent urges that the assembly action is an attempt to remove a member of the assembly in violation of the express constitutional provisions of sec. 8, art. IV. Since the violation of an express provision of the constitution is asserted by respondent, the courts do have jurisdiction to determine whether or not the facts alleged, and if true, do present a violation of sec. 8, art. IV. The courts have jurisdiction to entertain an action challenging legislative action where it is clear that the legislative action involves an alleged violation of a constitutional requirement.[2] Since the respondent does claim that he was a duly elected and duly seated member of the assembly, and that the assembly action was an attempt to remove him, the courts do have jurisdiction to answer the specific question of whether or not the complaint avers facts which, as a matter of law, make the assembly action no more than an attempt to settle an election contest or whether the assembly action was an attempt to remove a member.

Issue 2. *In adopting Resolution 9, A., was the assembly attempting (a) the removal of a member, or (b) the settlement of an election contest?* In resolving this issue there are some additional pertinent facts, all disclosed by official pro-

---

[2] Most recent illustration is *State ex rel. Reynolds v. Zimmerman* (1964), 22 Wis. (2d) 544, 126 N. W. (2d) 551, in which the court upheld court jurisdiction in an action alleging that by failing to reapportion the legislature as required by the constitution, a requirement of the constitution had been violated. See also *State Bank of Drummond v. Nuesse* (1961), 13 Wis. (2d) 74, 108 N. W. (2d) 283, in which the courts had jurisdiction to determine whether certain banking legislation had been properly enacted by the legislature and in conformity with the voting requirements of sec. 4, art. XI, Wisconsin constitution.

ceedings of the 1963 assembly, of which we take judicial notice.[3] The chief clerk of the assembly convened the 1963 session and read the name of Elfers among those whose election had been certified to and by the secretary of state, then announced that an election-contest notice (served on Elfers December 13, 1962) had been filed by Olson with the secretary of state on December 28, 1962,[4] and forwarded to the assembly (January 2, 1963). Elfers then took his oath of office and signed the roll with other members and the 1963 meeting of the assembly was convened. Elfers then received his seat assignment and voted on the organization of the assembly. In the next four weeks Elfers was named to the labor committee, voted in the assembly on five different measures, and was compensated for his services.[5]

---

[3] Judicial notice taken of copies of the legislative record from the secretary of state's office relative to bills which were acted on. *State ex rel. Martin v. Barrett* (1946), 248 Wis. 621, 22 N. W. (2d) 663.

Court examination of senate and assembly journals approved, *State ex rel. Postel v. Marcus* (1915), 160 Wis. 354, 152 N. W. 419.

". . . [T]his court has the power to take judicial notice of public records on file in the offices of various state officials and departments, . . ." *State v. Jelco* (1957), 1 Wis. (2d) 630, 638b, 85 N. W. (2d) 487, 86 N. W. (2d) 428.

Currie, Appellate Courts Use of Facts Outside of the Record by Resort to Judicial Notice and Independent Investigation, 1960 Wisconsin Law Review, 39.

[4] Sec. 13.16, Stats.

[5] Sec. 13.04, Stats., provides: "The presiding officer of each house, immediately after the commencement of each regular or extra session of the legislature, shall certify to the secretary of state the names of all qualified members of the house over which he presides; also the number of miles of travel for which each member is entitled to compensation. However, when any seat is contested, and notice of such contest has been filed as provided in section 13.16, no certificate with respect to such seat, or any claimant thereof, shall be issued until the question of the right thereto is finally determined. All such certificates shall be countersigned by the chief clerk."

Elfers was compensated through January 31st although he did not have such a certificate as a qualified member of the legislature from the presiding officer. See 52 Op. Atty. Gen. (1963) 17, 19.

Meanwhile the notice of election contest had been referred by the speaker to the standing committee on elections on January 9, 1963. That committee reported Resolution 9, A., for introduction on January 31st.

The only assembly rule [6] pertaining to contested seats provides:

"The Assembly may inquire into a contested election or the qualifications of any person claiming a seat therein, even though the provisions of Section 13.16 of the Statutes have not been complied with. Contestants for seats shall have the privilege of the Assembly until their respective cases are disposed of; such privilege extends only to allowing contestants access to the Chamber during the time occupied in settling the contest." [7]

As a matter of law, the facts alleged in the complaint as supplemented by those of which we have taken judicial notice clearly establish that the assembly action was taken to resolve a pending contest over the election of the assembly-man from the second district of Kenosha county. They do not establish an attempt to remove an existing member of the assembly. Every action that was taken by the assembly in seating Elfers, assigning him to a committee, permitting him to vote, were all done with notice to all, including the respondent, that Olson's notice of contest had been received and promptly referred to the assembly elections committee. The appellant certainly had done everything he could to alert the assembly to the fact that he contested the election.

[6] Rule 11, Assembly Manual, adopted 1913, which has remained substantially unchanged and in effect every session since then.

[7] State Senate Rule 13 similarly provides: "Contestants for seats shall have the privilege of the Senate until their respective cases are disposed of; the privilege to extend only so far as access to the Chamber, during the time occupied in settling the contest."

Rule 32 of the Rules of the United States House of Representatives also allows the privilege of the floor to contestants in election cases during the pendency of their cases in the House.

Although the rules do not expressly provide that when Elfers took his seat after the chief clerk read the notice of election contest, he did so provisionally with the understanding that his activities as a member were to discontinue if the election contest were resolved against him, nevertheless every action that was taken by the assembly to permit Elfers to be seated and to act as the assemblyman from the second district of Kenosha county, was taken with open knowledge that the Olson notice of contest had been received and was still pending. As a matter of law, it is clear that under these circumstances Elfers did not achieve the status of a member so that he could assert the provisions of sec. 8, art. IV, which authorizes removal for one of the stated causes and upon a two-thirds vote of all members.

Issue 3. *If the resolution was an attempt to settle an election contest, do the courts have jurisdiction to review the assembly's action?* Having determined that the alleged facts do not constitute an attempt by the assembly to remove one of its members but rather an attempt to settle the election contest, the question remains whether, under the facts, the court has any jurisdiction to review the assembly action. As noted, sec. 7, art. IV, does make each house the judge of elections, returns, and qualifications of its own members. There has been no prior case in this court that squarely considers the scope of this constitutional provision or the related question of what review may be had in the courts of any assembly action settling an election contest directed at one of its members. In the case of *State ex rel. La Follette v. Kohler,* court review was sought of alleged statutory violations which affected the election contest for governor. The court stated:

"By sec. 7 of art. IV it is provided: 'Each house shall be the judge of the elections, returns and qualifications of its own members;' thus committing jurisdiction to determine the validity of the election of a member of either house to that

house. No similar provision respecting other officers is to be found in the constitution." [8]

In *State ex rel. Anderton v. Kempf* [9] the court considered the question of whether there was court jurisdiction of an aldermanic election contest and permitted court review of that contest and in ruling noted that each legislative house was given power under sec. 7 to be the judge of its own elections, returns, and qualifications. At the municipal level the court concluded that the court and the legislature, *i.e.,* the council, had concurrent jurisdiction to decide election contests.

In 1937 the attorney general advised the secretary of state on which contestant for the assembly seat for Waupaca county in the 1936 election should be certified to the assembly as the victor. [10] Alvin A. Handrich had been certified as elected by the county clerk after a recount. His opponent, Edwin E. Russell, contested the election in proceedings in the circuit court for Waupaca county, in which court it was determined that Russell rather than Handrich was the victor. In his opinion, the attorney general referred to the provisions of sec. 7, art. IV, and stated:

"We are, therefore, clearly of the opinion that the circuit court of Waupaca county had no jurisdiction to cancel the certificate of election issued by the county clerk of Waupaca county upon the certification and determination of the board of canvassers dated November 28, 1936." [11]

The attorney general concluded that Handrich should be certified by the secretary of state to the assembly as the duly elected assemblyman. When the assembly convened, Handrich was seated.

---

[8] *State ex rel. La Follette v. Kohler, supra,* footnote 1, at page 556.
[9] (1887), 69 Wis. 470, 34 N. W. 226.
[10] 26 Op. Atty. Gen. (1937) 3.
[11] Id. at page 5.

In 1913 the attorney general previously opined that "the assembly is the sole judge and the courts have no jurisdiction of the matter" in an election contest where the contestant failed to follow the then existing statutory requirements as to when a notice of contest had to be filed.[12]

We conclude that, under the circumstances, the courts do not have jurisdiction to review the assembly's action in resolving the Elfers-Olson contest. Under our system of government this is one decision which the constitution leaves to the legislature alone to make. We do not endorse the assembly verdict; neither do we reject it. Under the circumstances this decision, simply, is none of our business. Full responsibility for that decision rests on the legislature. If the people in this assembly district or elsewhere do not like the assembly verdict [awarding the election to Olson by one vote in a total vote of 19,460, with only one vote ruled defective [13] after Elfers had been declared the victor in a total vote of 19,463, by the board of canvassers, first by 13 votes and then by seven votes (with 42 ballots considered defective), and by the circuit court by five votes (with 38 ballots ruled defective)] their recourse is at the polls.

*By the Court.*—Judgment reversed, cause remanded with instructions to dismiss complaint.

---

[12] 1 Op. Atty. Gen. (1913) 259.

[13] Elfers alleges that three more votes should have been counted, all for him, making Elfers the victor by two votes, in a total vote of 19,463.