OUTAGAMIE COUNTY and others, Respondents, v. SMITH, State Treasurer, and others, Appellants.

*January 8—January 30, 1968.*

28

For the appellants the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *A. W. Ponath* of Appleton, corporation counsel, and *Stewart G. Honeck* of Milwaukee, special counsel for Outagamie county, and oral argument by *Mr. Honeck.*

HEFFERNAN, J. The threshold question is whether the action of the legislatively created site committee is reviewable at all by the circuit court. Or, to put it another way, does the judiciary have the jurisdiction to review the recommendation of the site committee and of the final selection made by the Governor, the Co-ordinating Committee for Higher Education, and the Building Commission.

It seems clear, at the outset, that the decisions of the State's chief executive are not reviewable under ch. 227, Stats., because the Governor's office is not an administrative agency within the terms of that portion of the statutes. Both plaintiffs and defendants herein acknowledge that no appeal procedure specifically applicable to review the action of the site committee or the Governor, the Co-ordinating Committee for Higher Education, and the Building Commission is spelled out by the statute. The defendants, however, contend that the site committee falls within the statutory definition of those agencies whose determinations may be reviewed. Sec. 227.01, Stats., defines sub. (1) :

" 'Agency' means any board, commission, committee, department or officer in the state government, except the governor or any military or judicial officer of this state."

The defendants assert that the determinations were, therefore, reviewable under the Wisconsin Administrative Procedure Act and, as a consequence of plaintiffs' failure to file a petition for review within thirty days

after the receipt of the site committee's recommendation, they were foreclosed from proceeding with this review. Doubtless, the site committee constitutes an agency as defined above. However, we find no justification in the statutes that would lead to the conclusion that the Administrative Procedure Act authorizes a review of the kind of action taken by the site committee. Sec. 227.15, Stats., provides:

"227.15 **Judicial review; orders reviewable.** Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of taxation, the commissioner of banks and the commissioner of savings and loan associations, shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

It is apparent that the action of the site committee was advisory only. It is equally clear, though the action be denominated as a decision, which in itself is doubtful, that it affected the "legal rights, duties or privileges" of the plaintiffs only indirectly and not directly, as is required if the court is to consider the action to be reviewable. It is the plain meaning of the statute under which the site committee was organized that its action was advisory only and the final decision was to be the accord reached by the Governor, the Co-ordinating Committee for Higher Education, and the Building Commission. This concurring action is the only decision in the sequence of events alleged that might have the consequence of directly affecting the legal rights of the plaintiffs. The decision was thus, in part at least, that of the Governor, which is beyond peradventure excluded from review under the procedures of ch. 227. This factor alone is sufficient to vitiate the argument of the Attorney General that the complainants' remedy was under ch. 227. Moreover, in the absence of an allegation

of a constitutional usurpation, we decline to review a decision either made by the Governor or one in which he participates. The complainants herein have made no such claim. Accordingly, we decline to review per se the joint determination of the Governor, the Co-ordinating Committee for Higher Education, and the Building Commission.

However, it is within the province of the judiciary in a proper case to determine whether another agency of the government has properly performed its legislatively delegated function even though that function was a necessary antecedent to gubernatorial action. We are satisfied that this court may examine the recommendation of the site committee for the purpose of determining its nature and to inquire into whether the exercise of its powers should be reviewed or limited by this court.

As we have stated above, the site committee's conduct is not reviewable under the Administrative Procedure Act. The general rule was set forth in 1945 by Mr. Chief Justice ROSENBERRY, who stated in *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 69, 21 N. W. 2d 5, that:

"If no appeal or comparable procedure is prescribed for review, none exists. In the absence of legislative authorization to review the facts, administrative determinations can be reviewed only by *certiorari,* in which only questions of law are raised."

This rule, that the right of appeal is statutory and does not exist except when expressly given and cannot be extended to cases not within the statute, has been quoted with approval on numerous occasions. *Greenfield v. Joint County School Comm.* (1955), 271 Wis. 442, 447, 73 N. W. 2d 580; *Milwaukee v. Public Service Comm.* (1960), 11 Wis. 2d 111, 115, 104 N. W. 2d 167.

However, concurrent with these decisions there developed the exception alluded to in the *Clintonville Transfer Case, supra,* permitting a review by certiorari in

which only questions of law are raised. The recent case of *State ex rel. Kaczkowski v. Fire & Police Comm.* (1967), 33 Wis. 2d 488, 500, 148 N. W. 2d 44, 149 N. W. 2d 547, summarized the holdings of *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 199, 94 N. W. 2d 711; *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 111 N. W. 2d 198; and *State ex rel. Gudlin v. Civil Service Comm.* (1965), 27 Wis. 2d 77, 133 N. W. 2d 799, and concluded that they "all stand for the rule that where there are no statutory provisions for judicial review the action of a board or commission may be reviewed by way of *certiorari.*" The trial court herein relied on *Perkins v. Peacock* (1953), 263 Wis. 644, 658, 58 N. W. 2d 536, for the proposition that, even in cases where the statutory right to appeal is exclusive, nevertheless, there may be cases "where such right of appeal would be inadequate for such purpose and certiorari might lie." While we deem that *Perkins* is applicable only to those cases where a statutory appeal was provided but proved inadequate, nevertheless, we do consider it indicative of the consistent position of this court —that certiorari will lie in the unusual case where either the statutory appeal is inadequate or the lack of the statutory right of appeal makes necessary the review of legal questions involved in the decisions of an administrative agency.

Accordingly, we conclude that the review of the legislatively created site committee is not barred merely because no statutory method of review was provided. It is established that such a review of certain legal issues can be accomplished by certiorari.

*Was plaintiffs' action for declaratory judgment appropriate as a substitute for certiorari*

Although certiorari may be appropriate to reach questions of law in reviewing the actions of an adminis-

trative agency, the plaintiffs' action is brought for declaratory judgment under the provisions of sec. 269.56, Stats., the Uniform Declaratory Judgments Act. We conclude that the remedy of declaratory judgment is procedurally available to these plaintiffs. Sec. 269.56 (12) directs that the Uniform Declaratory Judgments Act is "remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." We said in the recent case, *Ramme v. Madison* (1967), 37 Wis. 2d 102, 114, 154 N. W. 2d 296, "The entire act is framed in broad terms. Liberal inclusion is specifically contemplated." While we do not conclude that a declaratory judgment is a substitute for certiorari, nevertheless, we hold that in the instant action, where it seeks merely a resolution of legal issues, that it is an appropriate procedural device to bring them before the court. 1 Anderson, *Actions for Declaratory Judgments*, 2d, p. 424, sec. 201, states:

". . . where a public body acts entirely without its jurisdiction, the rule against collateral attack, on an order of a board or commission, does not apply and even though a writ of certiorari were available the remedy of a declaratory judgment is likewise apposite . . . ."

We conclude, therefore, that the action for declaratory judgment is procedurally permissible.

*May there be judicial inquiry into the propriety of the procedure used by a legislatively created committee whose function is advisory only*

This court has taken judicial notice of the fact that on June 13, 1966, the date on which this complaint was filed, the Building Commission did in fact release planning funds for the purpose of commencing the process of constructing a university at the Green Bay-Shorewood

site. On January 8, 1968, the Building Commission authorized the construction of new buildings at two new university sites, one of which is in dispute herein, costing an estimated 12.8 million dollars. Classes at the new university are scheduled to begin in the fall of 1969.

Any legal action that has as its end the circumscription of legislative power is viewed charily by this court. In *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. 2d 120, 131, 115 N. W. 2d 498, we referred to the "wide berth to be given to administrative decisions of a legislative character." This is the expression of a fundamental principle of constitutional law.

Moreover, it is discretionary with a court whether or not it will render or enter a declaratory judgment "where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Sec. 269.56 (6), Stats.

22 Am. Jur. 2d, *Declaratory Judgments,* p. 852, sec. 13, points out that a declaration of rights "should not be rendered if it will not finally settle an actual controversy or be of some practical help in ending the controversy or stabilizing disputed legal relations." The same paragraph (p. 853) also points out that there is authority to a stronger effect and that is "that a court may not grant declaratory relief unless it is convinced that its judgment will end the litigation and fix the rights of the parties."

Herein, all the plaintiffs seek is a declaration that the site committee failed to carry out the mandate of the legislature by neglecting to evaluate various sites according to its own established criteria and that it unlawfully changed the final criteria as a result of a meeting in secret session contrary to sec. 14.90, Stats., the antisecrecy law. No further relief is sought by the complaint. Counsel during oral argument was questioned in regard to what supplemental relief might be afforded to implement a declaration of rights, but he persistently refrained from suggesting any specifics. None that might

remedy the situation in which the plaintiffs claim to find themselves are conceivably to be granted by any court. If such is the case, it would then be an abuse of discretion to enter a declaratory judgment which would not settle the rights of the parties or terminate litigation. Under any proceeding brought, a court should not enter judgment where the judgment would result in a declaration of rights that either should not or could not be enforced. We have heretofore defined a moot case as:

". . . one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy." [3]

We conclude that any declaration of rights that might result from the defendants' complaint for declaratory judgment could only result in a request for supplementary remedies which this court would refuse to grant. Accordingly, a declaration of rights against either the state administrative bodies concerned or the individuals could not have the effect of terminating the controversy. As long ago as 1860, Mr. Justice COLE in *Bushnell v. Beloit*, 10 Wis. 155 (*195), 168, 169 (*225), stated:

"We suppose it to be a well accepted political principle that the constitution of the state is to be regarded not as a grant of power, but rather as a limitation upon the powers of the legislature, and that it is competent for the legislature to exercise all legislative power not forbidden by the constitution or delegated to the general government, or prohibited by the constitution of the United States."

---

[3] *Wisconsin Employment Relations Board v. Allis-Chalmers Workers' Union* (1948), 252 Wis. 436, 440, 441, 31 N. W. 2d 772, 32 N. W. 2d 190; *State v. Zisch* (1943), 243 Wis. 175, 9 N. W. 2d 625; *Thoenig v. Adams* (1940), 236 Wis. 319, 294 N. W. 826.

It is undoubtedly true that the location of a campus site for an institution of higher education is within the province of the legislature, and this is acknowledged by the plaintiffs. Had the legislature itself selected the Green Bay-Shorewood location, no litigant would be audacious enough to question it in a judicial review. However, the legislature chose to delegate its authority to an *ad hoc* committee to act in the legislative function of investigating and advising. This power it undoubtedly has. *Cutts v. Department of Public Welfare* (1957), 1 Wis. 2d 408, 84 N. W. 2d 102.

Had the legislature seen fit to question the recommendation of the committee or the subsequent approval of the Governor, the Co-ordinating Committee for Higher Education, and the Building Commission, it could have done so. Yet subsequent to that action, the legislature has passed ch. 27 of the Laws of 1967, which would authorize any Wisconsin county to acquire and transfer property to the state for the location of these higher institutions of learning. Moreover, it refused to pass a bill (Assembly Bill 72, 1967) which would have reviewed the recommendation of the site committee and placed the university at the intersection of Highway 41 and State Trunk 54, a location that apparently would be more suitable to the desires of the complainants herein.

The defendants conclude that whatever errors might have existed in the procedures of the site committee and the officers who ratified its conduct thus were cured by subsequent legislative action. While a strong case for ratification might be made on these facts, we conclude that reliance on legislative ratification is unnecessary to reach the decision that judicial intervention in this controversy would be prohibited by the constitutional separation of powers. This court is without authority to intermeddle in matters of legislative concern. It is a well-settled principle of Wisconsin constitutional law that one branch of the government has no authority to compel

a co-ordinate branch to perform functions of judgment and discretion that are lawfully delegated to it by the constitution. The only power possessed by this court is to prevent any actions in excess of the authority vested in it by the constitution. *State ex rel. Martin v. Zimmerman* (1946), 249 Wis. 101, 23 N. W. 2d 610.[4]

Sec. 39.024 (4) (f), Stats., which creates the site committee, is a part of ch. 259 of the Laws of 1965. The first section of that chapter states that:

"It is the legislative intent by the provisions of . . . 39.024 (4) of the statutes that it be the established state's policy that educational opportunities be spread as broadly throughout the state as is educationally and economically feasible. This policy recognizes that the expansion of educational opportunities to new geographical areas of the state eases the student's financial burden. To implement this policy, section 39.024 (4) of the statutes authorizes the creation of new collegiate institutions . . . ."

Thus, the preamble to the very legislation with which we are concerned leaves no doubt that the determination to be made by the site committee was for the purpose of enunciating and establishing more specifically the policy standards broadly outlined by the legislature. *In re City of Beloit* (1968), 37 Wis. 2d 637, 155 N. W. 2d 633, whose mandate comes down on the same date as this case, we had reason to consider whether the determination of "public interest" was a proper function of the courts. We therein held that it was not. Mr. Chief Justice HALLOWS, speaking for the court, said:

"What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'nec-

[4] While *State ex rel. Martin v. Zimmerman* has been overruled by *State ex rel. Reynolds v. Zimmerman* (1964), 22 Wis. 2d 544, 126 N. W. 2d 551, insofar as it relates to the authority of the court to compel the legislature to perform a constitutional duty, that of reapportioning legislative districts, we nevertheless consider the language appropriate insofar as it applies to the exercise of acts within the legislative function.

essary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power . . . ."

While the *Beloit Case* involved a delegation of legislative power to the courts in respect to annexations, we consider the rationale of the court therein germane to the instant case. The site committee was directed to formulate criteria for locating a university in accordance with vaguely defined public interest policy considerations formulated by the legislature. This is clearly an exercise of the legislative function with which the courts should not and will not tamper.

This court will not interfere with the conduct of legislative affairs in the absence of a constitutional mandate to do so or unless either its procedure or end result constitutes a deprivation of constitutionally guaranteed rights. Short of such deprivations which give this court jurisdiction, recourse against legislative errors, nonfeasance, or questionable procedure is by political action only.

We are satisfied from a review of the record, however, that the plaintiffs were not dealt with with complete fairness. They placed reliance upon what they assumed to be the good faith representations of the site committee and expended substantial sums of money, and then, without notice, they allege that the criteria were changed. However, granting the comity that we must to a coordinate branch of the state government, no recourse is available in the courts. The grievances of which they complain did not rise to the dignity of an invasion of a constitutional right and as was stated in the case of *State ex rel. Elfers v. Olson* (1965), 26 Wis. 2d 422, 132 N. W. 2d 526, and as we may appropriately say here, "this decision, simply, is none of our business."

We should point out, however, that, while we are obliged to accept such ultimate facts as are properly pleaded in a complaint when it is before us on demurrer,

the grievances alleged do not appear to have quite the merit that the plaintiffs contend. The principal complaint of the plaintiffs is that the Regional Area Criteria were improperly amended. Yet it is significant to note the announced purpose of the criteria as set forth in the introduction to the document prepared by the site committee and appended to the complaint. As therein stated, the purpose of the Regional Area Criteria was to identify "the broad regional area in which the new collegiate institution will be *located.*" (Emphasis supplied.) In our review of the record, the site as finally selected was within the area described in the "final" criteria, which the plaintiff's acknowledge are lawful. Admittedly, references in the same document refer to the Regional Area Criteria not as areas in which the site is to be located but rather as areas "to be served." In view of these contradictory statements, which have not been reconciled by the plaintiffs, we would, as a matter of policy uniformly adopted by courts, use that interpretation which would sustain the legislative action. As so viewed, the site as selected was within the criteria that the plaintiffs acknowledge are proper. We confine, however, the *ratio decidendi* of this opinion to the premise that any remedy that might be afforded the plaintiffs would constitute an invasion of the legislative prerogative by the courts.

Accordingly, the petition for declaratory judgment should be dismissed as affording no remedy which would terminate the controversy. To grant a declaration of rights in the present instance would constitute an abuse of discretion.

*By the Court.*—Judgment reversed and the complaint is dismissed.

WILKIE, J., took no part.