FRED A. RISSER, Chairperson, Senate Organization Committee
You have requested my opinion of the constitutionality of section 2 of 1977 Senate Resolution 14, which, if adopted, would create senate rule 73 (1)(b), providing that:
 "No member who is an attorney may vote on any bill providing for the creation of additional judgeships or dealing with pay raises or retirement benefits for judges. Nothing in this paragraph shall excuse a member who is an attorney from voting on a budget or budget review bill introduced under section 16.47 or 16.475 of the statutes. Nothing in this paragraph shall excuse a member who is an attorney from voting on any bill pertaining both to the matters specified and to other aspects of the judicial branch of state government, but as to such bills any member who is an attorney may be excused under par. (a) at the member's request."
Because the Wisconsin Constitution grants to each house of the Legislature the authority to determine the rules of its own proceedings, Wis. Const. art. IV, sec. 8, those rules for the most part are immune from scrutiny by other branches of government. See State ex rel. Lynch v. Conta, 71 Wis.2d 662, 694,695, 239 N.W.2d 313 (1976). Rules of legislative procedure are not supreme, however, and cannot contravene provisions of the state constitution or provisions of the United States Constitution. 81A C.J.S. States sec. 52, at 399, 400. See Stateex rel. Lynch v. Conta, 71 Wis.2d at 695, 697; Integration of theBar Case, 244 Wis. 8, 34, 11 N.W.2d 604 (1943). Cf: Bond v.Floyd, 385 U.S. 116, 131 (1966); State ex rel. *Page 311 Elfers v. Olson, 26 Wis.2d 422, 426, 132 N.W.2d 526 (1965). Consequently, to the extent that procedural rules might be unconstitutional, they are subject to review like substantive acts of the Legislature. State ex rel. Lynch v. Conta,71 Wis.2d at 695. See State ex rel. Elfers v. Olson, 26 Wis.2d at 426; cf.Bond v. Floyd, 385 U.S. at 131.
I have concluded that the proposed rule would be unconstitutional because it would deny equal protection of the laws to those citizens represented in the Senate by members who are attorneys.
Meaningful analysis of this issue must begin with recognition of the following fundamental principle:
 "[R]epresentative government is in essence self-government through the medium of elected representatives of the people, and each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies. Most citizens can achieve this participation only as qualified voters through the election of legislators to represent them." Reynolds v. Sims, 377 U.S. 533, 565 (1964). See also Bond v. Floyd, supra, at 136, 137.
The proposed rule would affect not only the lawyer-legislators at whom it is aimed; it would affect their constituents as well. It would create two classes of citizens in Wisconsin, those whose elected representatives could participate fully in the legislative process, and those whose representatives could participate only partially on their behalf. Cf. Ammond v. McGahn,390 F. Supp. 655, 660 (D. N.J. 1975), rev'd. on other grounds,532 F.2d 325 (3rd Cir. 1976).
The authority of the Legislature to make classifications is great, of course, and any class it creates is presumed to be valid. E.g., State ex rel. Hammermill Paper Co. v. La Plante,58 Wis.2d 32, 74, 205 N.W.2d 784 (1973). When an irrational or arbitrary classification is made, however, i.e, when no state of facts can be conceived which would justify the different treatment each class would receive, the members of the disadvantaged class are denied their constitutional right to equal protection of the laws. Id. at 74, 75. I cannot imagine any realistic state of facts that would justify treating citizens represented by members of the Senate who also happen to be members of the legal profession differently from citizens represented *Page 312 
by senators who pursue other professions, trades, occupations or callings.
It may be the purpose of the proposed rule "to prevent persons, while possessed of the prestige and influence of official power, from using that power for their personal advantage" by creating offices outside the Legislature to which they anticipate appointment or election, and afterwards payment of salary and retirement benefits. Cf. State ex rel. Zimmerman v. Dammann,201 Wis. 84, 96, 228 N.W. 593 (1930). There is no valid reason, however, to suppose that lawyer-legislators are more inclined than other legislators to use their legislative power to further their own career interests outside that branch of government. Physician-legislators, for instance, might seek to increase the number and emoluments of medical staff positions in the state hospitals; educator-legislators, the professorial positions in the state schools; career public servant-legislators, the administrative positions in the state bureaucracy. The list could be nearly as extensive as the number of occupations engaged in by those elected to the Senate.
The same is true if the purpose of the proposed rule is to prevent senators from bestowing personal or political favors on occupational colleagues. There is no reason to suppose, moreover, that senators who are not attorneys would not seek to create additional judgeships, or to increase the pay and retirement benefits of judges, as a personal or political favor for relatives or friends in the legal profession.
I can discern no substantial difference between the two classes of citizens and senators the proposed rule would create that would justify the different treatment each would receive. The proposed rule, therefore, would deny equal protection of the laws to that class whose participation in the legislative process would be diluted solely because of the profession of the person chosen by the people to represent them.
Even if some rational basis for this classification could be conceived, however, the proposed rule would still be constitutionally offensive.
Abridgement of a fundamental right, such as that of any citizen or class of citizens to participate in the legislative process through elected representatives, Reynolds v. Sims, 377 U.S. at 561,562, 565, can be justified only by a compelling governmental interest, and must *Page 313 
be accomplished by means, rationally related to that interest, which are the least restrictive of the fundamental right. E.g.Elrod v. Burns, 427 U.S. 347, 362, 363 (1976), and cases cited.
 "`[A] State may not choose means that unnecessarily restrict constitutionally protected liberty. "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties."' Id. at 363, quoting Kusper v. Pontikes, 414 U.S. 51, 59 (1973) (citations in original omitted).
Preventing legislators from abusing their public offices for personal advantage appears to be a significant governmental interest. See State ex rel. Zimmerman v. Dammann, 201 Wis. at 96. This interest, however, can be, and is, satisfied by means which do not restrict the rights of the legislator's constituents. Article IV, sec. 12, of the state constitution prohibits any legislator from being appointed or elected, during the term for which that person was elected to the Legislature, to any civil office in the state which was created, or the emoluments of which were increased, during that term. The duration of this prohibition could be increased by constitutional amendment if it is deemed insufficient.
Assuming the state has a constitutionally valid compelling interest in preventing legislators from using their public offices for the private benefit of others, see generally State exrel. Reuss v. Giessel, 260 Wis. 524, 531, 51 N.W.2d 547 (1952), such a compelling interest could be similarly satisfied by prohibiting particular persons, such as relatives and close associates of legislators, from assuming civil offices during the same period that legislators are prohibited from doing so.
Because the proposed rule would unnecessarily abridge the fundamental right of Wisconsin citizens to participate in their government, it would violate the equal protection clause of thefourteenth amendment to the United States Constitution.
BCL:TJB *Page 314