Christopher GOODVINE, Petitioner,

v.

William SWIEKATOWSKI, Sarah Cooper, Chaplain M. Donovan, Dennis Mosher, Warden Pollard, Peter Ericksen, Michael Mohr, Tom Gozinske, Rick Raemisch, John Bett, Dan Westfield, Mathew Frank, Wis. Dep't of Corr's, Wis. Dep't of Corr's—Division of Adult Institutions and Timothy Lundquist, Respondents.

No. 08–CV–702–BBC.

United States District Court, W.D. Wisconsin.

Jan. 26, 2009.

1050

Christopher Goodvine, Green Bay, WI, pro se.

Corey F. Finkelmeyer, Wisconsin Department of Justice, Madison, WI, for Respondents.

## OPINION and ORDER

BARBARA B. CRABB, District Judge.

In this proposed prisoner civil rights action under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act and state law, petitioner Christopher Goodvine contends that prison officials at the Green Bay Correctional Institution are preventing him from practicing his Muslim faith in various ways and discriminating against him because of his religion. Petitioner seeks leave to proceed *in forma pauperis* under 28 U.S.C. § 1915 and has made an initial partial payment as directed by the court under § 1915(b)(1).

Because petitioner is a prisoner, I am required under the 1996 Prison Litigation Reform Act to screen his complaint and dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. Having reviewed petitioner's complaint, I conclude that he may proceed on the following claims:

(1) respondents Swiekatowski, Cooper, Mosher, Mohr, Pollard, Gozinske, Raemisch, Bett, Westfield, Ericksen and Frank violated his rights under RLUIPA by refusing to allow him to keep more than one religious text while in segregation;

(2) respondent Donovan violated his rights under the establishment clause and the equal protection clause by refusing to provide him with a copy of the Qur'an while providing Bibles to Christian prisoners;

(3) respondent Swiekatowski violated his rights under RLUIPA by prohibiting him from ordering his own copy of the Qur'an;

(4) respondents Donovan, Mosher, Pollard, Mohr, Gozinske, Raemisch and Lundquist are violating his rights under RLUIPA by denying his request for a halal diet;

(5) respondents Donovan, Mosher, Lundquist, Pollard, Mohr, Gozinske and Raemisch are violating his rights under the equal protection clause and the establishment clause by refusing to modify his meal schedule to accommodate his fasting even though they modify meal schedules for Christians who wish to fast;

(6) respondent Donovan is violating his rights under the establishment clause and equal protection clause by conducting research to assist Christian prisoners in practicing their religion but refusing to help petitioner identify the proper direction for prayer under his religion.

Petitioner's other federal claims will be dismissed for his failure to state a claim upon which relief may be granted.

In the body of his complaint, petitioner does not say why he is suing the Wisconsin Department of Corrections or the Division of Adult Institutions. Although petitioner may not sue state agencies under § 1983, *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), he may do so under RLUIPA, 42 U.S.C. §§ 2000cc–2(a) & 2000CC–5, so I assume that he means to sue the Department of Corrections for each of his RLUIPA claims. However, because the Department of Corrections encompasses the Division of Adult Institutions, it is unnecessary to sue them separately, so I will the dismiss the complaint as to the division.

■ Also, I must dismiss the claims petitioner raises under Wis. Stat. § 301.33 and the Wisconsin Constitution. Section 301.33 imposes certain requirements on prison officials to accommodate prisoners' religious exercise, but petitioner cannot sue under that statute because it does not create a private right of action. *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 74–79, 307 N.W.2d 256, 266–68 (1981) (right of action to enforce statute or regulation does not exist unless directed or implied by legislature). If he wishes to enforce the statute, his only option is to file a writ of certiorari in state court. *Outagamie County v. Smith*, 38 Wis.2d 24, 34, 155 N.W.2d 639, 645 (1968) (with respect to laws that are not made enforceable by

statute expressly, action is reviewable only by certiorari).

■ The state constitution does not authorize suits for money damages except in the context of a takings claim. *W.H. Pugh Coal Co. v. State*, 157 Wis.2d 620, 634–35, 460 N.W.2d 787, 792–93 (1990) (holding that plaintiff could sue state for money damages arising from an unconstitutional taking of property because article I, section 13 of the Wisconsin Constitution requires that state provide "just compensation" when property is taken); *Jackson v. Gerl*, 2008 WL 753919, *6 (W.D.Wis. 2008) ("Other than one very limited exception inapplicable to this case, I am not aware of any state law provision that allows an individual to sue state officials for money damages arising from a violation of the Wisconsin Constitution.") To the extent petitioner is seeking injunctive relief under the state constitution, principles of sovereign immunity prevent this court from granting that relief. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that state sovereign immunity prohibits federal courts from ordering state officials to conform their conduct to state law). Thus, if petitioner wishes to obtain an injunction under the state constitution, he must do so in state court.

In addressing any pro se litigant's complaint, the court must construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In his complaint, petitioner fairly alleges the following facts.

## ALLEGATIONS OF FACT

### A. *Limitation on Publications*

Petitioner Christopher Goodvine is a Sunni Muslim incarcerated in the segregation unit at the Green Bay Correctional Facility. In 2007, he asked respondent

William Swiekatowski (the security supervisor) and respondent Sarah Cooper (the program supervisor) to allow him to keep two folders of loose leaf tariqah materials in his cell. Petitioner uses these materials to "follow his daily lessons" for practicing his religion. However, respondent Swiekatowski "would put it off on [respondent] Cooper and she on him."

When petitioner wrote to the prison chaplain, respondent M. Donovan, the chaplain told petitioner "that he would not involve himself in this." Donovan's supervisor, respondent Dennis Mosher, did not respond to petitioner's request to keep his tariqah papers. Donovan later told petitioner that Mosher did not want to get involved either.

Petitioner filed a grievance that was denied by the inmate complaint examiner, Michael Mohr, under DOC 309 IMP 6A, which states that prisoners in segregation are allowed "1 religious text soft cover only." Mohr's decision was affirmed by respondent William Pollard (the warden), respondent Tom Gozinske (the corrections complaint examiner) and respondent Rick Raemisch (the former Deputy Secretary of the Department of Corrections).

Also in 2007, petitioner asked respondents Swiekatowski and Cooper to permit him to keep additional sacred texts in his cell, but this request was denied. Without these additional texts, petitioner is unable to "observ[e] many aspects of his religion, such as the reading and studying of the sacred law, . . . the recitation of daily invocations and supplications contained in the prophetic traditions, the studying of the science of tajwid or proper recitation of the Qur'an and the reading of prophetic traditions and sermons of pious sages enjoining the good and forbidding the evil." When petitioner filed a grievance, it was denied by respondent Mohr, a decision that was affirmed by respondents Pollard, Gozinske and Raemisch.

DOC 309 IMP 6A was drafted by respondents John Bett (the administrator for the Division of Adult Institutions), respondent Dan Westfield (the security chief for the department) and respondent Matthew Frank (former Secretary of the department). Respondents Pollard, Ericksen, Mosher, Cooper and Swiekatowski have adopted the policy for use at the Green Bay prison.

### B. *Qur'an*

When petitioner arrived at the Green Bay prison in 2007, his Qur'an was confiscated because it was a hardcover book. Petitioner asked respondent Donovan for another copy, but Donovan told him to obtain a Qur'an from "seg staff" even though the chapel library had "many" donated copies of the Qur'an at the time and even though Donovan provided Bibles to Christian prisoners.

When he asked Swiekatowski and Cooper whether he could purchase a paperback copy with his own funds, Cooper told him to ask Swiekatowski and Swiekatowski told him to ask the chaplain. Eventually, Swiekatowski gave petitioner permission to purchase a Qur'an from an outside source, but it was "months" before Swiekatowski sent an order to the business office. That office refused to authorize the purchase on the ground that the segregation handbook prohibits prisoners from purchasing or receiving property orders while they are housed in segregation; Swiekatowski agreed with that decision.

Petitioner did not receive a Qur'an at the Green Bay prison until he went on a hunger strike on August 25, 2008.

### C. *Religious Diet*

Petitioner's religious beliefs require him to eat food according to Islamic law, otherwise known as halal. Although the prison

serves a vegan diet, the food provided contains many ingredients that are not halal, such as gelatin, margarine and monoglycerides. When petitioner requested a "fully halal" diet, respondents Donovan, Mosher, Pollard and Timothy Lundquist (the religious practices steering committee chairperson) denied the request. When he filed a grievance, it was denied by Mohr, Pollard, Gozinske and Raemisch.

Petitioner believes that he needs to fast every other day to "fulfil[l] his tariqah goals of purifying himself and reigning [sic] in his shahwati or desires and gluttony." Petitioner wanted prison officials to accommodate his desire to fast by providing him "a few sandwiches" at night so that he could break his fast. Respondents Donovan, Mosher, Lundquist and Pollard denied his request even though they modify meal schedules for Christians who are fasting. When he filed a grievance, it was denied by Mohr, Pollard, Gozinske and Raemisch.

### D. *Prayer*

Petitioner must pray five times a day, each time facing the Ka'bah in Mecca, a practice called the Qiblah. In March 2008, petitioner asked respondent Swiekatowski to "find out the true Qiblah for him" because other guards and prisoners gave him inconsistent answers regarding the proper direction to face. Specifically, petitioner asked Swiekatowski to speak with the chaplain and an imam who visits the prison weekly and then publish the answer in the prisoner handbook. Swiekatowski told petitioner that he would "look into it."

Petitioner also asked respondent Donovan himself. When the chaplain said he did not know what the proper direction was, petitioner asked him to "bring the Muslim Imam to the [prison] to establish the Qiblah from all four wings." Donovan told petitioner to ask any guard which direction east is, even though petitioner

had told Donovan that guards gave him inconsistent answers and that the direction was more specific than simply "facing east." Petitioner filed a grievance, which was denied by respondents Pollard and Gozinske.

Respondent Donovan "facilitates the availability of the dates of the liturgical year for Christians."

## DISCUSSION

### A. *Overview of the Law on Religious Rights in Prison*

 Under either the First Amendment or RLUIPA, petitioner has the initial burden to show that he has a sincere religious belief and that his religious exercise is substantially burdened. *Koger v. Bryan,* 523 F.3d 789, 797–98 (7th Cir. 2008); *Vision Church v. Village of Long Grove,* 468 F.3d 975, 996–97 (7th Cir. 2006). A "substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003); *see also Koger,* 523 F.3d at 798–99 (applying Civil Liberties standard to prisoner RLUIPA claim). Under the First Amendment, the religious exercise must be "central" to the adherent's belief or practice. *Kaufman v. Karlen,* No. 06–C–205–C, 2007 WL 1821098, *13 (W.D.Wis. June 21, 2007) (citing *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)); under RLUIPA, a substantial burden on *any* religious exercise triggers the statute's protections. 42 U.S.C. § 2000cc–1(a)(1)–(2).

 Once petitioner shows a substantial burden, the question under the First Amendment is whether the burden is one that applies equally to everyone or wheth-

er it targets petitioner's beliefs in particular; if the rule applies to everyone without regard to a particular religion, there is no constitutional violation. *Employment Division Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Sasnett v. Litscher,* 197 F.3d 290 (7th Cir. 1999), the court of appeals questioned whether *Smith* applies to prisoner claims, but in *Koger,* 523 F.3d at 796, the court concluded that it did. *Id.* (*"Unlike cases arising under the Free Exercise Clause of the First Amendment,* this prohibition [on imposing substantial religious burdens] applies even where the burden on the prisoner results from a rule of general applicability.") (emphasis added and internal quotations omitted).

■■■ Even if a prisoner's religious exercise is substantially burdened, such a burden violates First Amendment rights only if the burden is not reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350–51, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Four factors are relevant to that determination: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether the prisoner retains alternatives for exercising the right; the impact that accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

■■■ Under RLUIPA, the analysis is quite different (and easier for a prisoner to meet). Once petitioner shows a substantial burden on a religious exercise, respondents must show that the restriction furthers "a compelling governmental interest," and does so by "the least restrictive

means." *Cutter v. Wilkinson,* 544 U.S. 709, 712, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

#### B. *Limitation on Publications*

■■■ Petitioner alleges that prison rule DOC IMP 6A limits the religious materials he may own to one soft cover text and that he is unable to practice his faith without his tariqah materials and additional religious texts. At the pleading stage, that is enough to show that the rule places a substantial burden on his sincere religious beliefs under RLUIPA. However, it remains petitioner's burden to *prove* these matters at summary judgment or at trial. *E.g., Smith v. Allen,* 502 F.3d 1255 (11th Cir.2007) (prison officials entitled to summary judgment on prisoner's RLUIPA claim because prisoner failed to show that denial of requested religious object "placed more than an inconvenience on his religious exercise") (internal quotations and brackets omitted). If petitioner succeeds at making this showing, it will be respondents' burden to show that the rule limiting religious materials of segregation prisoners to one paperback book is the least restrictive means to further a compelling governmental interest. Although other courts have found limitations on religious books to violate RLUIPA, *e.g., Washington v. Klem,* 497 F.3d 272 (3d Cir.2007), special considerations may apply in cases such as this one involving prisoners in segregation.

The only remaining question regarding petitioner's challenge to DOC IMP 6A relates to the proper respondents for this claim. Petitioner has sued respondents Donavan, Swiekatowski, Cooper, Mosher, Mohr, Pollard, Gozinske, Raemisch, Bett, Westfield, Ericksen and Frank. Petitioner alleges that respondents Bett, Westfield, Frank, Ericksen, Mosher, Cooper and Swiekatowski are responsible for en-

acting the policy and that respondents Mohr, Pollard, Gozinske and Raemisch enforced the policy in the context of the grievance procedure. Petitioner's allegations regarding those who enacted the policy lack any detail regarding the precise nature of their involvement in creating the policy, but the allegations are enough to give respondents notice, which is all that Fed.R.Civ.P. 8 requires.

 However, according to petitioner's own allegations, respondent Donovan had no involvement in enacting or enforcing the policy; rather, Donovan said expressly that he would not get involved in the dispute. It cannot be said that Donovan "substantially burdened" petitioner's religious exercise by failing to take action on a matter over which he had no authority. Accordingly, petitioner's complaint will be dismissed as to his claim that respondent Donovan violated his rights under RLUIPA by failing to authorize petitioner to possess additional religious materials.

 Petitioner's claim under the free exercise clause must be dismissed in its entirety. The prison rule applies equally to *all* religions. Petitioner does not suggest that he is allowed to keep more non-religious books than religious books. Thus, under *Smith,* his First Amendment claim fails because the publication limitation does not target petitioner's religion.

### C. *Qur'an*

Petitioner's claim that he was denied a Qur'an unlawfully has two components: (1) a claim under the establishment clause and the equal protection clause that respondent Donovan provided Christian prisoners with free copies of the Bible; and (2) a claim under RLUIPA and the free exercise clause that respondent Swiekatowski refused to allow petitioner to buy his own Qur'an on the ground that prisoners in segregation are prohibited from ordering publications. Petitioner includes respondent Cooper on this second claim, but he includes no allegations that she was involved in the denial, so the claim will be dismissed as to Cooper.

 With respect to petitioner's claim that respondent Donovan is discriminating against him on the basis of religion, the analysis is the same whether the claim is viewed under the establishment clause or the equal protection clause. *Board of Education of Kiryas Joel Village School Dist. v. Grumet,* 512 U.S. 687, 715, 114 S.Ct. 2481, 129 L.Ed.2d 546 (O'Connor, J., concurring) ("[T]he Religion Clauses . . . and the Equal Protection Clause as applied to religion—all speak with one voice on this point.") The question is whether Donovan is singling out particular religions for special treatment without a secular reason for doing so. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Kaufman v. McCaughtry,* 419 F.3d 678, 683–84 (7th Cir.2005).

If respondent Donovan provides Bibles to Christians simply because those books have been donated by private parties without solicitation from prison officials, that would not be an indication of discriminatory treatment. A prison official is not showing a preference for a particular religion simply by passing along a resource that someone else has provided. However, petitioner alleges that copies of the Qur'an were available as well, but Donovan refused to give one to petitioner. Because it may not be clear without discovery whether Donovan was providing preferential treatment to Christians, I will allow petitioner to proceed on his claim under the establishment clause and the equal protection clause.

 I will allow petitioner to proceed on his RLUIPA claim against Swiekatowski as well. Although petitioner alleg-

es that he eventually received a Qur'an, he alleges that Swiekatowski blocked his ability to obtain one for a number of months. This is sufficient at the pleading stage to suggest that petitioner's religious exercise was substantially burdened for the purpose of RLUIPA. Again, however, I must dismiss the claim with respect to the free exercise clause because petitioner alleges that Swiekatowski denied his request to purchase a Qur'an on the ground that all prisoners in segregation were prohibited from ordering outside publications, which is a rule of general applicability under *Smith*.

### D. *Religious Diet*

■ Like his claim that he was denied a Qur'an, petitioner's claim that he was denied a religious diet has two components: (1) respondents Donovan, Mosher, Pollard, Mohr, Gozinske, Raemisch and Lundquist denied his request for a halal diet; (2) respondents Donovan, Mosher, Lundquist, Pollard, Mohr, Gozinske and Raemisch denied his request to receive sandwiches at night to accommodate his wish to fast every other day. The court of appeals recognized in *Koger*, 523 F.3d 789, that a failure to receive a diet that complies with a prisoner's religious beliefs may be a substantial burden on religious exercise under RLUIPA. Accordingly, I will allow petitioner to proceed on that claim. Again, it will be petitioner's burden to prove at summary judgment or trial that the diet he receives violates his sincerely held religious beliefs and that respondents have failed to provide a viable alternative. I must dismiss petitioner's claim that the failure to receive a halal diet violates his First Amendment rights because he does not allege that prisoners of other religious faiths receive greater accommodation in receiving their special diets.

■ With respect to petitioner's claim regarding his ability to fast, respondents are not stopping him from doing this; he is free to fast whenever he wishes. Petitioner's complaint is not that he is unable to fast, but that respondents will not change the meal schedule so that he may have sandwiches at the end of his fast. Petitioner does not suggest that his religion requires him to break his fast in this way. Thus, petitioner has no claim that respondents are substantially burdening his religious exercise. Distilled, petitioner's claim is one regarding inadequate food, but petitioner cannot complain when he is making his own choice to fast. *Cf. Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir.2005) ("A prisoner cannot force the prison to change its rules by going on a hunger strike and blaming the prison for his resulting loss of weight."). Further, it would be highly implausible to suggest that petitioner's health is being put at risk by waiting a few more hours until the next morning for his next meal.

■ Although petitioner fails to state a claim under RLUIPA and the free exercise clause, he may have a claim under the establishment clause and equal protection clause. Petitioner alleges that respondents modify meal schedules for Christians who wish to fast for religious purposes but not Muslims. Petitioner provides few details about the nature of the accommodations for Christians. To prevail on this claim at summary judgment or trial, petitioner will have to show that respondents have such a policy of accommodating Christians and that petitioner's request is similar enough to any accommodations provided to others to suggest that respondents are promoting Christianity over other faiths.

■ Petitioner says in his complaint that the refusal to accommodate his religious diet was "caused by and in accor-

dance with rules and policies promulgated, maintained, implemented or otherwise given effect by" respondents Matthew Frank and John Bett. However, he fails to identify any rule or policy or otherwise provide respondents Frank and Bett with notice required by Rule 8 of their involvement in the alleged statutory and constitutional violations. Accordingly, petitioner's claim against Frank and Bett will be dismissed.

### E. *Prayer*

■ Petitioner has failed to state a claim upon which relief may be granted under RLUIPA or the free exercise clause with respect to his claim that respondents have failed to "establish the Qiblah" for all the wings of the prison. Respondents have not prohibited him from facing any direction he wishes while praying. Rather, his claim is that they have failed to do an adequate investigation for him in determining what the proper direction is. This goes beyond what RLUIPA or the free exercise clause requires. These laws prohibit the government from placing "substantial burdens" on a prisoner's ability to exercise his religion, but they do not require officials to do a prisoner's religious research or become experts on the proper way for the prisoner to practice his religion.

When a prisoner has no way to practice his religion without assistance from the prison, affirmative obligations may be appropriate. For example, failing to provide a prisoner with a religious diet imposes a substantial burden on a prisoner's religious exercise because a prisoner is dependent on prison officials for his food; he is not free to provide himself with an alternative diet that is consistent with his religious beliefs. In this case, however, petitioner identifies no reason why prison officials are in any better position than he is to learn the information he seeks. By his

own assertion, "establishing the Qiblah" is more complicated than simply determining which direction is east. Petitioner wants prison officials to consult with an imam to make that determination but petitioner gives no reason why he cannot do this himself. Alternatively, petitioner might be able to purchase his own Qiblah compass, which is often used by Muslims in assisting them in determining the proper direction for prayer.

■ However, I will allow petitioner to proceed on his claim under the establishment clause and the equal protection clause against respondent Donovan because he alleges that Donovan "facilitates the availability of the dates of the liturgical year for Christians." Although it is not clear what petitioner means by this, I assume it is that Donovan conducts research for Christian prisoners to keep them apprised of Christian holy days. If Donovan is not making similar efforts to accommodate Muslim beliefs and Christian beliefs and he does not have a secular reason for the differential treatment, this may be a violation of petitioner's constitutional rights. At summary judgment or at trial, petitioner will have to prove that Donovan "denied [him] a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to [Christian] religious precepts." *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079.

### ORDER

IT IS ORDERED that

1. Petitioner Christopher Goodvine is GRANTED leave to proceed on the following claims:

(a) respondents Wisconsin Department of Corrections, Swiekatowski, Cooper, Mosher, Mohr, Pollard, Gozinske, Raemisch, Bett, Westfield, Ericksen and Frank violated or are violating petitioner's rights

under RLUIPA by refusing to allow him to keep more than one religious text while in segregation;

(b) respondent Donovan violated his rights under the establishment clause and the equal protection clause by refusing to provide him with Qur'an while providing Bibles to Christian prisoners;

(c) respondents Wisconsin Department of Corrections and Swiekatowski violated his rights under RLUIPA by prohibiting him from ordering his own copy of the Qur'an;

(d) respondents Wisconsin Department of Corrections, Donovan, Mosher, Pollard, Mohr, Gozinske, Raemisch and Lundquist are violating his rights under RLUIPA by denying his request for a halal diet;

(e) respondents Donovan, Mosher, Lundquist, Pollard, Mohr, Gozinske and Raemisch are violating his rights under the equal protection clause and the establishment clause by refusing to modify his meal schedule to accommodate his fasting while modifying meal schedules for Christians who wish to fast;

(f) respondent Donovan is violating his rights under the establishment clause and equal protection clause by conducting research to assist Christian prisoners in practicing their religion but refusing to help petitioner identify the proper direction for prayer under his religion.

2. Petitioner is DENIED leave to proceed on all other federal claims for his failure to state a claim upon which relief may be granted; his state law claims are DISMISSED because they are not justiciable in federal court.

3. Petitioner's complaint is DISMISSED as to the Division of Adult Institutions.

4. A strike will be recorded in accordance with 28 U.S.C. § 1915(g) and *George v. Smith,* 507 F.3d 605 (7th Cir.2007).

5. For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that they file with the court. Once petitioner learns the name of the lawyer that will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard documents petitioner submits that do not show on the court's copy that he has sent a copy to respondents or to respondents' attorney.

6. Petitioner should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of their documents.

7. Pursuant to an informal service agreement between the Attorney General and this court, copies of petitioner's complaint and this order are being sent today to the Attorney General for service on the state respondents.

8. Petitioner is obligated to pay the unpaid balance of their filing fees in monthly payments as described in 28 U.S.C. § 1915(b)(2). The clerk of court is directed to send a letter to the warden of petitioners' institution informing the warden of the obligation under *Lucien v. DeTella,* 141 F.3d 773 (7th Cir.1998), to deduct payments from petitioners' trust fund account until the filing fees have been paid in full.