STATE EX REL. SUNDBY, on behalf of himself and all persons similarly situated, Petitioner, v. ADAMANY, Secretary, Department of Revenue and another, Respondents: LUCEY, Governor, Intervening Respondent.*

*No. 75–416. Argued December 2, 1975.—Decided February 3, 1976.*
(Also reported in 237 N. W. 2d 910.)

* Motion for rehearing denied, without costs, on April 7, 1976.

For the petitioner there was a brief and oral argument by *Robert D. Sundby,* pro se, of Madison.

For the respondents: *Bronson C. La Follette,* attorney general, *John C. Murphy,* assistant attorney general, and *David J. Hase,* deputy attorney general, all of Madison, and oral argument by *John C. Murphy,* assistant attorney general.

For the intervening respondent there was a brief by *Irvin B. Charne, Howard B. Tolkan, Arthur J. Harrington,* and *Charne, Glassner, Tehan, Clancy & Taitelman, S. C.,* all of Milwaukee, and oral argument by *Irvin B. Charne.*

Wilkie, C. J. We reach the merits. This is an original action for declaratory judgment on whether the governor, in violation of art. IV, sec. 1, Wisconsin Constitution, exceeded the authority granted to him by art. V, sec. 10, when he vetoed certain provisions of an appropriations bill, ch. 39, Laws of 1975, amended, repealed, repealed and recreated in part by ch. 80, Laws of 1975.

We conclude that the governor acted within his authority and, therefore, we deny the affirmative relief sought by petitioner.

The pertinent facts forming the basis of this litigation are undisputed. The governor vetoed certain portions of the appropriations bill, ch. 39, Laws of 1975, amended, repealed, repealed and recreated in part by ch. 80, Laws of 1975. The relevant portions of the law as enacted incorporated amendments made by the Assembly-Senate Conference Committee to the executive budget bill submitted by the governor, and introduced by the Joint Committee on Finance as Assembly Bill 222.

In his complaint the petitioner challenges those partial vetoes relating to sec. 435 (sec. 60.175, Stats.), sec. 439 (sec. 61.46 (3)), sec. 441 (sec. 62.12 (4m)), sec. 442 (sec. 65.07 (2)), and sec. 457 (sec. 70.62 (4)). The subject matter of the portion of the appropriations bill to which these partial vetoes apply involves tax levy limits imposed on towns, villages, cities and counties.

Sections 60.175 (7), 61.46 (3) (g), 62.12 (4m) (g), 65.07 (2) (g), and 70.62 (4) (g), Stats., contain the provisions specifically challenged by the petitioner. As originally passed by the legislature and sent to the governor, sec. 60.175 (7) read as follows:

"(7) If the town board desires to increase its tax levy above the limitations specified in this section, it shall publish such intent in a class I notice under ch. 985 in the official town newspaper. The notice shall include a statement of the purpose and the amount of the proposed levy

and the amount by which it wishes to exceed the limits imposed by this section. If, within 20 days after publication of the notice, a petition is filed with the town clerk signed by a number of electors equal to, or in excess of, 5% of the number of electors casting ballots in the town in the last gubernatorial election, the question of the proposed amount of increase in levy above the limitations specified in this section shall be submitted to a referendum at a spring election, general election or special election. If the increase is approved at the referendum, or if no petition is timely filed, the town may increase its levy in such amount and shall notify the secretary of revenue of such increase, on a form provided by the secretary, on or before March 1 following the levy.

"(a) The question presented to the electors shall be in substantially the following form:

"Should the town board be authorized to adopt a property tax levy for town purposes for this year which is in excess of the maximum levy certified by the state?

"(b) The authorization by referendum shall pertain only to the levy next following the referendum.

"(c) The clerk of the town shall notify the department of revenue of the result of any such referendum no later than 10 days thereafter."

The remaining challenged sections are identical, with the exception of different entity designations, depending on the type of governmental entity being affected, e.g., substitution of "village" for "town" in sec. 61.46 (3) (g), Stats.

The governor disapproved certain portions of sec. 60.-175 (7), Stats., as follows:

"(7) If the town board desires to increase its tax levy above the limitations specified in this section, it shall publish such intent in a class I notice under ch. 985 in the official town newspaper. The notice shall include a statement of the purpose and the amount of the proposed levy and the amount by which it wishes to exceed the limits imposed by this section. ~~If, within 20 days after publication of the notice, a petition is filed with the town clerk signed by a number of electors equal to, or in excess of, 5% of the number of electors casting ballots in the town in the last gubernatorial election,~~ the question of the proposed amount of increase in levy above the

limitations specified in this section shall be submitted to a referendum at a spring election, general election or special election. If the increase is approved at the referendum, ~~or if no petition is timely filed,~~ the town may increase its levy in such amount and shall notify the secretary of revenue of such increase, on a form provided by the secretary, on or before March 1 following the levy."

Chapter 39, Laws of 1975, was published by the respondent-secretary of state in the *Wisconsin State Journal* on July 30, 1975.

Subsequently, certain portions of ch. 39, Laws of 1975, were amended, repealed, and repealed and recreated in part by ch. 80, Laws of 1975. These changes did not involve sec. 60.175 (7), Stats., and the identical sections relating to other governmental entities. Changes were effectuated, however, in the section immediately preceding sec. 60.175 (7), as well as in the corresponding sections relating to other governmental entities. As originally enacted, sec. 60.175 (6) read as follows:

"60.175 (6). The department of revenue shall determine the maximum levy allowed each town for town purposes under this section and shall certify such amount to each town on November 15 of each year, commencing with 1975. If the town levies taxes in excess of such maximum without receiving approval of the electors under sub. (7), the excess amount shall be subtracted from subsequent distributions of shared taxes under subch. I of ch. 79 until fully recovered."

Following amendment, repeal, repeal and recreation in part, sec. 60.175 (6), as published, read as follows:

"Section 4. 60.175 (6), (8) and (9) of the statutes, as created by chapter 39, laws of 1975, are amended to read:
"60.175 (6). If the town levies taxes in excess of the maximum allowed by this section without receiving approval of the electors under sub. (7), the excess amount shall be subtracted from subsequent distributions of shared taxes under subch. 1 of ch. 79 until fully recovered, and the levy shall be reduced by the amount of

such excess in determining the maximum allowable levy for the subsequent year."

Chapter 80, Laws of 1975, incorporating the noted changes, was published by the secretary of state in the *Wisconsin State Journal* on October 1, 1975.

In substance, the governor's veto made mandatory the local referendums which the bill, as passed by the legislature, made optional. There are three threshold issues for this court to consider before we reach the merits.

*Standing.*

The petitioner has standing to bring this suit seeking declaratory judgment. Liberally construed, the plaintiff's petition, which stands as a complaint herein, constitutes a taxpayer's suit to adjudicate conduct of the governor alleged to be in violation of his constitutional authority. Petitioner asserts that he is a taxpayer and that he will suffer pecuniary disadvantage because the governor's actions herein are in violation of his constitutional authority.[1]

*Proper Parties Respondents.*

There is no question that the respondent secretary of the department of revenue is administering the challenged sections of the appropriation bill as if the partial vetoes of the governor are valid and effective. This makes him a proper party, particularly since the petitioner seeks to enjoin the secretary, compelling him to administer the levy limit laws in accordance with this court's determination regarding the validity or invalidity of the vetoes. The secretary of state is also a proper

[1] *Thompson v. Kenosha County* (1974), 64 Wis. 2d 673, 221 N. W. 2d 845; *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 116 N. W. 2d 142; *S. D. Realty Co. v. Sewerage Comm.* (1961), 15 Wis. 2d 15, 112 N. W. 2d 177.

party respondent since he has the legal duty to publish the laws as enacted by the legislature and governor, including the budget. If, in fact, the partial vetoes are invalid, the secretary of state has a mandatory duty to publish those sections of the enactment as if they had not been vetoed.

*Existence of Justiciable Controversy.*

This action is brought pursuant to the Declaratory Judgments Act, sec. 269.56, Stats. One of the requirements of the Declaratory Judgments Act is that "[t]here must exist a justiciable controversy—that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it."[2]

In his petition (now the complaint), petitioner asserts that the partial vetoes exercised by the governor are contrary to the Wisconsin constitutional provisions under which the governor is allowed to make partial vetoes; that the action is *publici juris* because the exercise of the power is an unlawful attempt to legislate in violation of the separation of powers; and that all this creates uncertainty and doubt on the part of political subdivisions of the state in planning their budgets. The respondents are incorrect in asserting that these allegations do not present a controversy ripe for determination. Of course, this court, in a declaratory judgment action, will not declare future rights.[3] But here the controversy is ripe for determination because the vetoes have already occurred and the constitutional violation, if any, has already occurred. No future event is necessary to enlarge upon the circumstances which currently present a controversy. In *State ex rel. Wisconsin Telephone Co. v. Henry,*[4]

---

[2] *State ex rel. La Follette v. Dammann* (1936), 220 Wis. 17, 22, 264 N. W. 627.

[3] *Selective Ins. Co. v. Michigan Mut. Life Ins. Co.* (1967), 36 Wis. 2d 402, 153 N. W. 2d 523.

[4] (1935), 218 Wis. 302, 260 N. W. 486.

the relator challenged the exercise of the item veto power before the tax had been levied, although notification had been made that a penalty would be imposed if payment of the tax were refused. Similarly, it is reasonable to assume here that if a political subdivision attempted to exceed the levy limits under the provisions of the legislation as it now stands, failure to follow the mandatory referendum procedures would result in some type of penalty relating to shared taxes. Moreover, determination on this matter will afford relief from uncertainty as to a legal question:

". . . Sec. 269.56 (12) directs that the Uniform Declaratory Judgments Act is 'remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.' We said in the recent case, *Ramme v. Madison* (1967), 37 Wis. 2d 102, 114, 154 N. W. 2d 296, 'The entire act is framed in broad terms. Liberal inclusion is specifically contemplated.' . . ."[5]

Therefore, under the facts of this case, as presented by the pleadings, we conclude there is a controversy that is indeed ripe for judicial determination.

*Validity of Governor's Item Vetoes.*

Art. V, sec. 10, Wisconsin Constitution, outlines the parameters of the governor's authority with respect to legislative enactments, including his "item veto power":

". . . Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it, but if not, he shall return it, with his objections, to that house in which it shall have originated, who shall enter the objections at large upon the journal and proceed to reconsider it. Appropriation bills may be approved in

---

[5] *Outagamie County v. Smith* (1968), 38 Wis. 2d 24, 36, 155 N. W. 2d 639.

whole or in part by the governor, and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for other bills. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill, or the part of the bill objected to, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for or against the bill or the part of the bill objected to, shall be entered on the journal of each house respectively. If any bill shall not be returned by the governor within six days (Sundays excepted) after it shall have been presented to him, the same shall be a law unless the legislature shall, by their adjournment, prevent its return, in which case it shall not be a law."

More than 40 state constitutions vest authority in the state chief executive to exercise some form of partial veto. The great majority limit this authority to appropriation bills.[6]

The purpose of the partial veto power in this state was spelled out in *State ex rel. Martin v. Zimmerman:*[7]

". . . Its purpose was to prevent, if possible, the adoption of omnibus appropriation bills, logrolling, the practice of jumbling together in one act inconsistent subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits, with riders of objectionable legislation attached to general appropriation bills in order to force the governor to veto the entire bill and thus stop the wheels of government or approve the obnoxious act. Very definite evils were inherent in the lawmaking processes in connection with appropria-

---

[6] *See:* Burke, *"The Veto Power in Washington State,"* Staff Report to the Constitution and Elections Committee (1973), (Wisconsin Legislative Reference Bureau); Beckman, *"The Item Veto Power of the Executive,"* 31 Temple L. Q. 27 (1957).

[7] (1940), 233 Wis. 442, 447, 448, 289 N. W. 662.

tion measures. Both the legislature and the people deemed it advisable to confer power upon the governor to approve appropriation bills in whole or in part, . . ."

The question of extent of this item veto power has been litigated in a number of jurisdictions. The two major issues involved concern what should be considered an appropriation bill and what should be considered an item or items within that bill subject to the partial veto. As to what should be considered an item or items subject to the item veto, the constitutions of a number of states specifically limit the power to "item or items" and courts of those jurisdictions have often construed this designation so that the chief executive is prohibited from exercising the veto with respect to any matters of general legislation contained in an appropriation bill,[8] or words which set out the purpose of the bill,[9] or conditions attached to the appropriation.[10]

The Wisconsin Constitution, by way of contrast, confers upon its chief executive the power to object to "part" of the bill and, in construing this power, this court has indicated that the chief executive has a greater range of options pursuant to such terminology as to the manner in which he may exercise the partial veto than he might have if the power were limited to "items."

Respondents argue that analysis of the use made of the power in the instant circumstances must be limited to application of principles expressed by this court in previous cases in which the exercise of the partial veto was challenged. We agree.

This brings us to the three principal cases dealing with the use of the item veto in Wisconsin: *Henry, Martin,* and

[8] *Patterson v. Dempsey* (1965), 152 Conn. 431, 207 Atl. 2d 739.
[9] *State ex rel. Cason v. Bond* (Mo. 1973), 495 S. W. 2d 385.
[10] *Miller v. Walley* (1920), 122 Miss. 521, 84 So. 466; *Opinion of the Justices* (Del. 1973), 306 Atl. 2d 720; *Welden v. Ray* (Iowa 1975), 229 N. W. 2d 706.

*Finnegan*. In *State ex rel. Wisconsin Telephone Co. v. Henry*,[11] the bill in question authorized certain forms of taxation for the purpose of raising state revenue, which was then to be appropriated for emergency relief. The governor vetoed those portions of the bill purporting to declare legislative intent and creating an agency for administration of the fund. This court held that the term "part" was broader than the term "item,"[12] and that the chief executive of this state was empowered by the constitutional provision to veto all parts of an appropriation bill regardless of their nature, unless they constitute inseparable conditions or provisos upon the particular appropriation involved. It was in this case that this court first enunciated a test for review of the partial veto:

"As that bill is worded, there is not only an entire absence of any expressed proviso or condition, or otherwise expressly stated connection between the parts disapproved and the parts which were approved by the governor, but, on the other hand, the parts approved, as they were in the bill, as it was when originally introduced, and as they continued therein at all times and are still in ch. 15, Laws of 1935, constitute, in and by themselves, a complete, entire, and workable law, for the appropriation for relief purposes, of the money to be raised, as tax revenues thereunder, and for the allotment and use of that appropriation . . . ."[13]

Thus, in *Henry*, it was recognized that the question for determination was whether or not the portions vetoed constituted a separable portion of the entire bill. Because in *Henry* it was concluded that the portions vetoed were separable, this court deemed it unnecessary to decide whether the governor has the power to disapprove an inseparable condition or proviso.[14]

[11] (1935), 218 Wis. 302, 260 N. W. 486.
[12] *Id.* at page 311.
[13] *Id.* at page 314.
[14] *Id.* at page 309.

The wording utilized in *Henry* was firmly established as an appropriate test for review of the exercise of the partial veto power in *State ex rel. Martin v. Zimmerman.*[15] In that case the bill partially vetoed contained appropriations for public welfare. This court stated:

"No contention is made in the instant case that the parts of Bill No. 563, S., approved by the governor do not leave a complete body of law of proper subject matter for a separate enactment by the legislature. We think it clear that ch. 533, Laws of 1939, which contains all of Bill No. 563, S., excepting the parts thereof disapproved by the governor, constitutes an effective and enforceable law on fitting subjects for a separate enactment by the legislature. See *State ex rel. Wisconsin Tel. Co. v. Henry*, 218 Wis. 302, 315, 260 N. W. 486.

"The defendant contends that assuming the governor has the power of partial veto after the legislature has adjourned *sine die*, that the exercise of such power in the instant case so changed the legislative program or policy provided in Bill No. 563, S., as to render the parts approved constituting ch. 533, Laws of 1939, invalid. It must be conceded that the governor's partial disapproval did effectuate a change in policy; so did the partial veto of the bill involved in the case of *State ex rel. Wisconsin Tel. Co. v. Henry, supra*, which this court held to be valid. The question here is whether the approved parts, taken as a whole, provide a complete workable law. We have concluded that they do, and we must give them effect as such."[16]

Thus, *Henry* and *Martin* establish the principle that the partial veto power may be utilized to veto any portion of a bill, whether the portion itself is an item of appropriation or not, even if the result effectuates a change in legislative policy, as long as the portion vetoed is separable and the remaining provisions constitute a complete and workable law.

[15] (1940), 233 Wis. 442, 289 N. W. 662.
[16] *Id.* at pages 449, 450.

The scope of the item veto power was also considered in *State ex rel. Finnegan v. Dammann*.[17] In *Finnegan* the principle was reiterated that the power exists with respect to parts of an appropriations bill not dealing with appropriations. It was emphasized that the bill upon which the veto is exercised must contain an appropriation within its four corners, rather than merely affecting another law which contains an appropriation.[18]

It is conceded here that an appropriation bill is involved. Thus, the narrow question deals only with the extent of the governor's item veto authority on passages in admitted appropriation legislation.

Petitioner argues that recent opinions of the attorney general indicate that a governor cannot veto a portion of an appropriation bill altering an appropriation figure,[19] or striking down a condition imposed on the amount appropriated.[20] We do not need to consider these opinions or the propositions they stand for because there is no question in this case that the governor neither altered an appropriation nor removed a contingency or condition on the amount appropriated. Thus this controversy is controlled by the law as stated in *Henry, Martin,* and *Finnegan*.

The legislative power is vested by the Wisconsin Constitution in the senate and the assembly.[21] The governor has a role in the legislative process as prescribed by art. V, sec. 4, Wisconsin Constitution, as follows:

"The governor shall be commander in chief of the military and naval forces of the state. He shall have power to convene the legislature on extraordinary occasions, and in case of invasion, or danger from the preva-

[17] (1936), 220 Wis. 143, 264 N. W. 622.
[18] *Id.* at pages 147–149.
[19] 62 Op. Atty. Gen. (1973), 238.
[20] 63 Op. Atty. Gen. (1974), 313.
[21] Art. IV, sec. 1, Wis. Const.

lence of contagious disease at the seat of government, he may convene them at any other suitable place within the state. He shall communicate to the legislature, at every session, the condition of the state, and recommend such matters to them for their consideration as he may deem expedient. He shall transact all necessary business with the officers of the government, civil and military. He shall expedite all such measures as may be resolved upon by the legislature, and shall take care that the laws be faithfully executed."

Furthermore, he has specific authority under the statutes controlling the enactment of budget legislation under sec. 16.45, *et seq.*, Stats., including the following:

"**16.46  Biennial budget, contents.**
"The biennial state budget report shall be prepared by the secretary, under the direction of the governor, and a copy of a budget-in-brief thereof shall be furnished to each member of the legislature on the day of the delivery of the budget message. The biennial state budget report shall be furnished to each member of the legislature on or about February 15 of each odd-numbered year and shall contain the following information:

"(1) A summary of the actual and estimated receipts of the state government in all operating funds under existing laws during the current and the succeeding bienniums, classified so as to show the receipts by funds, organization units and sources of income;

"(2) A summary of the actual and estimated disbursements of the state government from all operating funds during the current biennium and of the requests of departments and the recommendations of the governor for the succeeding biennium;

"(3) A statement showing the condition of all operating funds of the treasury at the close of the preceding fiscal year and the estimated condition at the close of the current year;

"(4) A statement showing how the total estimated disbursements during each year of the succeeding biennium compare with the estimated receipts, and the additional revenues, if any, needed to defray the estimated expenses of the state;

"(5) A statement of the actual and estimated receipts and disbursements of each department and of all state aids and activities during the current biennium, the departmental estimates and requests, and the recommendations of the governor for the succeeding biennium. Estimates of expenditures shall be classified to set forth such expenditures by funds, organization units, appropriation, object and activities at the discretion of the secretary;

"(6) Any explanatory matter which in the judgment of the governor or the secretary will facilitate the understanding by the members of the legislature of the state financial condition and of the budget requests and recommendations.

"(7) The report of the department of revenue prepared under s. 16.425, together with the purposes and approximate costs in lost revenue of each new or changed tax exemption device provided in the proposed budget. This information shall be integrated with the rest of the information in this section in such a manner as to facilitate to the fullest extent possible, direct comparisons between expenditure information and tax exception device information, as defined in s. 16.425."

Moreover, *Henry*[22] describes the nature of the governor's item veto power as follows:

"It may well be that sec. 10, art. V, Wisconsin constitution, was not intended to empower the governor, in vetoing parts of an appropriation bill, to dissever or dismember a single piece of legislation which is not severable, or so as to leave merely provisions which are not a complete or fitting subject for a separate enactment by the legislature. Although that may not have been intended, there is nothing in that provision which warrants the inference or conclusion that the governor's power of partial veto was not intended to be as coextensive as the legislature's power to join and enact separable pieces of legislation in an appropriation bill. As the legislature can do that in this state, there are reasons why the governor should have a coextensive power of partial veto,

[22] *State ex rel. Wisconsin Telephone Co. v. Henry*, 218 Wis. at 314, 315.

to enable him to pass, in the exercise of his *quasi*-legislative function, on each separable piece of legislation or law on its own merits. That is not necessary in many states because they have constitutional provisions which prohibit the legislature from passing a bill which contains more than one subject. Wisconsin, however, has no such prohibition except as to private and local bills (sec. 18, art. IV, Wis. Const.). As far as general legislation is concerned, the legislature may, if it pleases, unite as many subjects in one bill as it chooses. Therefore, in order to check or prevent the evil consequences of improper joinder, so far, at least, as appropriation bills are concerned, it may well have been deemed necessary, in the interest of good government, to confer upon the governor, as was done by the amendment in 1930 of sec. 10, art. V, Wisconsin constitution, the right to pass independently on every separable piece of legislation in an appropriation bill."

The governor, then, does have a constitutionally recognized role in legislation.

Some argument is advanced that in the exercise of the item veto the governor can negative what the legislature has done but not bring about an affirmative change in the result intended by the legislature. We are not impressed by this argued distinction. Every veto has both a negative and affirmative ring about it. There is always a change of policy involved. We think the constitutional requisites of art. V, sec. 10, fully anticipate that the governor's action may alter the policy as written in the bill sent to the governor by the legislature.

The governor here explained his veto in his accompanying message as follows:

"*Sections 435, 439, 441, 442 and 457* allow municipalities or counties to exceed the limits unless their citizens petition for a referendum. I have vetoed this provision to provide instead that a referendum be mandatory whenever a municipality or county believes the limits should be exceeded. A mandatory referendum is preferable because it ensures that a majority vote of the

citizens will be required for the limits to be exceeded. Moreover, the partial veto will eliminate the 20-day delay which was required before a decision to raise the tax levy could be finalized. This speed-up of the process should aid municipalities in making their budget decisions."[23]

We conclude the action taken by the governor was valid, in that the portions vetoed, although not actually items of appropriation, were separable provisions, not constituting provisos or conditions to an item of appropriation, and the remaining portions constitute a complete and workable law. Moreover, the vetoes resolved an inconsistency created by the sections immediately preceding each challenged section, in that the language in each refers to a procedure ostensibly requiring electorate approval prior to exceeding levy limits, which language was not changed by the legislature in its amendment, repeal, repeal and recreation of ch. 30, Laws of 1975, by ch. 80, Laws of 1975, subsequent to the governor's partial veto.

*By the Court.*—Rights declared validating the partial vetoes exercised by the governor pursuant to art. V, sec. 10, Wisconsin Constitution, upon secs. 435, 439, 441, 442 and 457 of ch. 39, Laws of 1975, as amended by ch. 80, Laws of 1975. Relief requested by petitioner denied.

[23] *Executive Vetoes of Bills Passed by the 1975 Wisconsin Legislature,* Wisconsin Briefs, No. 75–5, Legislative Reference Bureau (August, 1975), page 5.