FRED A. RISSER, Chairperson Senate Organization Committee
The Senate Organization Committee has requested my opinion on the validity of Governor Thompson's partial veto of section 1117g of the Budget Adjustment Act, 1991 Wisconsin Act 269. Section 1117g, as passed by the Legislature and as vetoed in part by the Governor, provides:
SECTION 1117g. 605.35 of the statutes is created to read:
 605.35 [Loan]* to general fund. On or before June 30, 1992, the property fund shall make [a loan of]* $10,000,000 to the general fund. [Interest shall accrue on the principle balance at the average rate earned by the state on its deposits in public depositories during the period of the loan. The general fund shall repay the loan in 5 annual installments of $2,000,000 principle plus accrued interest, beginning on or before June 30, 1994.]*
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
Before the partial veto, section 1117g directed the Local Government Property Insurance Fund to loan $10 million to the state's general fund and required the general fund to repay the loan in five annual installments of $2 million plus accrued interest beginning on or before June 30, 1994.
After the Governor's partial veto, section 1117g reads: "On or before June 30, 1992, the property fund shall make $10,000,000 to the general fund." The Governor's veto message on section 1117g states: "I am partially vetoing this section to remove language designating the fund transfer as a loan and *Page 328 
setting up a repayment schedule. The effect of my veto is to transfer $10 million to the general fund in fiscal year 1992-93."
You ask my opinion on two issues. First, you ask whether the Governor's partial veto of section 1117g is valid under article V, section 10 of the Wisconsin Constitution. If the answer to that question is yes, you ask whether the law is valid in light of section 604.03(2), Stats., which provides that various funds, including the Local Government Property Insurance Fund, are held in trust for the benefit of insureds and proper claimants and prohibits those funds from being spent for any other purpose. The law specifically provides that the funds "may be borrowed by the state only pursuant to normal and usual investment practices under s. 604.05." Because I have concluded that the partial veto of section 1117g was invalid, I do not reach your second question.
Wisconsin's Constitution grants the Governor "a uniquely broad and expansive power to veto parts of an appropriation bill." Wis.Senate v. Thompson, 144 Wis.2d 429, 450, 424 N.W.2d 385 (1988). The limitation on the exercise of that partial veto authority "is that what remains after the veto must be a complete and workable law." Id. at 451. In Wis. Senate the court refrained from deciding that some of the vetoes challenged in that case were invalid "because the resulting provisions are inartful, clumsy, ungrammatical or incomprehensible." Id. at 462. The court reiterated:
 [T]he test applied to determine the validity of the governor's partial vetoes is not one of grammar. The only requirement is that the result remaining after the partial veto is a "complete and workable law." Awkward phrasing, twisted syntax, alleged incomprehensibility and vagueness are matters to be resolved only on a case-by-case basis in which specific challenges to discrete applications of the new provisions are raised in a complete factual setting.
Id. at 462-63 (citation omitted). *Page 329 
"On or before June 30, 1992, the property fund shall make $10,000,000 to the general fund" is unworkable because it doesn't make sense. The law does not tell the Commissioner of Insurance, the manager of the fund under section 604.04, what the Commissioner is to do on June 30, 1992.
The law can be made comprehensible by giving an uncommon meaning to the verb "make." For example, "make" can mean "to cause to be available; provide (to make change, to make room)" or "to deliver (a speech) or utter (remarks, etc.)." Webster's New World Dictionary of the American Language 855 (2d coll. ed. 1974). Nontechnical words in a statute, however, are to be construed according to their common and ordinary usage. Ervin v.City of Kenosha, 159 Wis.2d 464, 484, 464 N.W.2d 654 (1991). If "make" is given its common and ordinary meaning, the phrase "make $10,000,000 to the general fund" is incomprehensible.
Alternatively, the law could be given meaning by adding "a loan of," "a transfer of" or "a gift of," after the word "make." Although a court may "read words in place which seem to be there by necessary or reasonable inference," this judicial license "should never be used to make a law." Pfingsten v. Pfingsten,164 Wis. 308, 313-14, 159 N.W. 921 (1916). Adding a phrase after the word "make" would not be the effectuating of legislative intent; it would be creating a law. The courts will uphold legislative enactments if the meaning of the statute is merely elusive and "if any reasonably intelligible analysis can result." Marshfieldv. Cameron, 24 Wis.2d 56, 62, 127 N.W.2d 809 (1964). An instruction to "make $10,000,000 to the general fund," however, is not an obscure expression of an idea; it is not an expression of an idea at all.
I must conclude that section 1117g after the partial veto is not a complete and workable law. The law can be given meaning only by giving the word "make" an uncommon definition or by creating a law by inserting a phrase after the word "make." I must also conclude that an otherwise *Page 330 
incomplete and unworkable law cannot be made complete and workable through the Governor's veto message.
In April 1990 the voters of Wisconsin amended article V, section 10 of the Wisconsin Constitution to provide: "In approving an appropriation bill in part, the governor may not create a new word by rejecting individual letters in the words of the enrolled bill." Wis. Const. art. V, § 10(1)(c). The Governor, therefore, did not have the authority to use his partial veto to change "make a loan" to "make a transfer" by striking individual letters in the rest of section 1117g. If the Governor is allowed to create ambiguity, or worse, through the use of the partial veto and then, through his veto message, allowed to accomplish a result which he could not accomplish through the exercise of partial veto, the April 1990 amendment to the constitution becomes a nullity.
Under Wisconsin's Constitution, a governor's partial veto is valid if it results in a complete, entire and workable law without reference to the Governor's veto message. Although reference to an executive message may be permissible when construing ambiguous executive action, Medlock v. Schmidt,29 Wis.2d 114, 121, 138 N.W.2d 248 (1965), it is not proper to use the Governor's veto message to give meaning to a law which otherwise would have no meaning. I conclude, therefore, that the Governor's partial veto of section 1117g of 1991 Wisconsin Act 269 did not result in a complete and workable law.
If a governor's affirmative approval is not necessary for a bill to become law, the parts of the bill vetoed become law as though there had not been an invalid partial veto. State ex rel.Finnegan v. Dammann, 220 Wis. 143, 149, 264 N.W. 622 (1936). The Wisconsin Constitution requires the Governor's affirmative approval for a bill to become a law only if the Legislature's adjournment prevents the Governor from returning the bill to the Legislature: "Any bill not returned by the governor within 6 days . . . after it shall have been presented to the governor shall be law unless the legislature, by final *Page 331 
adjournment, prevents the bill's return, in which case it shall not be law." Wis. Const. art. V, § 10(3).
The bill in question in Finnegan required the Governor's affirmative approval because the Legislature had adjourned, preventing him from returning the bill to the Legislature. The 1991 Budget Adjustment Act did not require the Governor's approval to become law because the Legislature had not adjourned. In fact, the Governor did return his partial vetoes to the Legislature. Therefore, because the partial veto is invalid "the secretary of state has a mandatory duty to publish those sections of the enactment as if they had not been vetoed." State ex. relSundby v. Adamany, 71 Wis.2d 118, 125, 237 N.W.2d 910 (1976). In this case, the partial veto was ineffective as a veto and, since no approval was required, the law is in force. Finnegan,220 Wis. at 149.
JED:AL *Page 332