OPINION OF THE COURT
Edward H. Lehner, J.
The initial issue to be resolved on these motions is whether the plaintiff, as a member and Speaker of the New York State Assembly (the Assembly) has the standing and legal capacity to challenge as unconstitutional the Governor’s line-item veto of certain budget bill provisions.
In January 1998, defendant Governor George E. Pataki (the Governor) submitted an executive budget to the houses of the New York State Legislature (the Legislature) for the fiscal year 1998-1999, as well as numerous budget bills pursuant to article VII of the New York Constitution. Some of said bills approprL ated monies, whereas others detailed the manner in which appropriated monies are to be expended and also proposed changes in the laws concerning the operations of certain governmental programs. When the Governor and the legislative leaders failed to come to an agreement on an over-all budget, the Legislature enacted a series of budget bills which struck out or reduced certain appropriations proposed by the Governor and also added new items of appropriations and directives. In acting on the bills submitted to him, the Governor exercised 55 separate line-item vetoes in bills which plaintiff asserts were “non-appropriation bills”, a term which both parties agree is not in the Constitution.
Thereafter, plaintiff filed this action as a “Member and Speaker, New York State Assembly” (the Speaker), asserting that, while the Governor constitutionally has the right to veto items in an appropriation bill, he has no constitutional right to veto items in “non-appropriation bills”, and that such bills must be either approved or vetoed in their entirety. Consequently, plaintiff seeks a declaration that: “(a) The Governor’s assertion of the line-item veto [in the 55 instances] violates Article IV, § 7 of the Constitution of the State of New York [and that] (b) Legislation relating to the Executive Budget that does not appropriate moneys is not subject to the Governor’s line-item veto power under Article IV, § 7 of the Constitution” (complaint U 90).
*317 The Speaker brings this action in his official capacity, specifically declining to sue as a taxpayer under article 7-A of the State Finance Law. The Governor moves to dismiss the complaint pursuant to CPLR 3211 (a) (2) and (3) based on a claimed lack of standing and legal capacity to bring the action or, in the alternative, to transfer venue to Albany County. Plaintiff cross-moves to convert defendant’s motion to one for summary judgment in his favor.
The issue of standing and capacity to sue must be considered at the outset of any litigation (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]).
“Standing is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria * * * That an issue may be one of ‘vital public concern’ does not entitle a party to standing * * * a litigant must establish its standing in order to seek judicial review * * *
“The burden of establishing standing to raise that claim is on the party seeking review” (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]).
“To this essential principle of standing, the courts have added rules of self-restraint, or prudential limitations: a general prohibition on one litigant raising the legal rights of another; a ban on adjudication of generalized grievances more appropriately addressed by the representative branches; and the requirement that the interest or injury asserted fall within the zone of interests protected by the statute invoked” {supra, at 773).
A discussion of the modern concept of standing must start with the Court of Appeals decision in St. Clair v Yonkers Raceway (13 NY2d 72, 76 [1963]), where it stated that “the constitutionality of a State statute may be tested only by one personally aggrieved thereby, and then only if the determination of the grievance requires a determination of constitutionality”, citing Schieffelin v Komfort (212 NY 520, 537 [1914]), which stated “that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers”.
In Matter of Posner v Rockefeller (26 NY2d 970 [1970]), a case heavily relied upon by defendant, three assemblymen sued to invalidate certain appropriation bills passed by the Legisla *318 ture and signed by the Governor because the bills consisted in a number of instances of “lump sum” appropriations without the detail required by article VII of the NY Constitution. Relying on St. Clair v Yonkers Raceway (supra) and Matter of Donohue v Cornelius (17 NY2d 390 [1966]) (which followed St. Clair in dealing with a constitutional challenge to an administrative rule), the Court of Appeals dismissed the proceeding for lack of standing “as citizens and taxpayers”, a four-Judge majority adding the following (at 971-972): “Nor does their status as Assemblymen give them the requisite standing to challenge in the judicial branch the validity of appropriation bills submitted by the Governor, and it matters not whether such bills have been passed by the Legislature or were still pending before that body at the time the proceeding was instituted.” Three Judges concurred solely on the constraint of St. Clair, thus disassociating themselves from the above-quoted statement.
The next important case in this area was Boryszewski v Brydges (37 NY2d 361, 362 [1975]), which modified St. Clair (supra) by holding that “a taxpayer has standing to challenge enactments of our State Legislature as contrary to the mandates of our State Constitution”. In that case a taxpayer challenged the constitutionality of both the legislative practice of providing members with an allowance in lieu of expenses (the so-called “lulus”), and certain provisions of the legislative and executive retirement plan. In revising the rules on standing, the Court initially noted that “[i]n other settings in which questions of standing have been posed it has been our disposition to expand rather than to contract the doctrine” (at 363), and then wrote (at 364):
“We are satisfied that the time has now come when the judicially formulated restriction on standing (which we recognize has had a venerable existence) should be modified to bring our State’s practice with respect to review of State legislative action into conformity not only with the practice in the majority of other States but also with the procedural standing of taxpayers to challenge local actions (General Municipal Law, § 51). We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action. In the present instance it must be considered unlikely that the officials of State government who would otherwise be the only ones having standing to seek review would vigorously attack legislation under which each is or may be a personal beneficiary * * *
*319 “Where the prospect of challenge to the constitutionality of State legislation is otherwise effectually remote, it would be particularly repellant today, when every encouragement to the individual citizen-taxpayer is to take an active, aggressive interest in his State as well as his local and national government, to continue to exclude him from access to the judicial process — since Marbury v Madison (1 Cranch [5 US] 137) the classical means for effective scrutiny of legislative and executive action. The role of the judiciary is integral to the doctrine of separation of powers. It is unacceptable now by any process of continued quarantine to exclude the very persons most likely to invoke its powers.”
Shortly after the rendering of this decision, article 7-A of the State Finance Law was enacted, section 123-b of which authorizes any “citizen taxpayer”, whether or not “affected or specially aggrieved”, to challenge an “illegal or unconstitutional disbursement of state funds”.
While in Boryszewski (supra) the Court was specifically dealing with the ability of a taxpayer to challenge the constitutionality of a legislative act, the portion of the above quotation stating that it would be “unlikely that the officials of State government who would otherwise be the only ones having standing to seek review would vigorously attack legislation under which each is or may be a personal beneficiary” (at 364 [emphasis supplied]) implies that a legislator does have standing to challenge the constitutionality of a State statute as it was the legislators to whom the court was referring as the beneficiaries of the so-called “lulus”.
WTiile not dealing with the question of standing of a legislator, in Matter of King v Cuomo (81 NY2d 247 [1993]), the Court, in a proceeding commenced by a local public official, declared that the legislative practice of recalling a bill sent to the Governor after having passed both houses of the Legislature was unconstitutional. In so doing, the Court observed (at 251):
“Our precedents are firm that the ‘courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government’ (Saxton v Carey, 44 NY2d 545, 551 * * * ) * * *
“The internal rules of the Assembly and the Senate, which reflect and even purport to create the recall practice, are entitled to respect. However, those rules cannot immunize or withdraw the subsisting question of constitutional law-making power from judicial review.”
*320 In two Third Department cases, legislators were found to have standing and capacity to sue. In Winner v Cuomo (176 AD2d 60 [1992]), three members of the Assembly sought a judgment declaring that Governor Cuomo violated the New York Constitution by not submitting all of his budget bills simultaneously with his executive budget. After ruling that the action was not moot (even though the budget had already been passed by the time the appeal reached the Court) because the same issue was likely to be raised in the future, the Court determined the plaintiffs had standing to bring the suit. This conclusion was based on the finding that the plaintiffs were “charged with acting on the Executive Budget” (at 63) and by reducing the time they had to review the Governor’s proposals, he hampered their ability to question members of the Executive Department regarding the budget. Hence, plaintiffs suffered “injury within their zone of interest, protected by NY Constitution, article VII, § 3 and State Finance Law § 24” (at 63-64). In Matter of Sullivan v Siebert (70 AD2d 975 [1979]), a member of the Assembly sought to have the heads of certain State departments timely issue their annual reports in compliance with section 164 of the Executive Law. The court found that, as a member of the Legislature, the plaintiff had a statutory right to receive copies of the reports and hence he had standing to pursue the action.
The United States Supreme Court decision in Raines v Byrd (521 US 811 [1997]), relied upon by defendant, is inapposite as that case was based on Federal law under which a Federal court has jurisdiction of a dispute only if it is a “case” or “controversy”. In denying standing to six members of Congress to challenge the Federal line-item veto law, the Court noted that plaintiff failed to meet the Federal standing requirement in that plaintiffs “ ‘must allege personal injury fairly traceable to the defendant’s allegedly unlawful conduct and likely to be redressed by the requested relief ” (521 US, at 818). In Society of Plastics Indus. v County of Suffolk (77 NY2d 761, 772, supra), it was noted that the “standing requirement in Federal actions has been grounded in the Federal constitutional requirement of a case or controversy * * * a requirement that has no analogue in the State Constitution”. See also Coleman v Miller (307 US 433 [1939]), where standing was granted to 20 members of the Kansas State Senate challenging the ratification by that body of an amendment to the United States Constitution when a 20-20 deadlock was broken by the vote of the Lieutenant Governor of the State; Colorado Gen. Assembly v *321 Lamm (704 P2d 1371 [Colo 1985]), where the Legislature was found to have standing to challenge the constitutionality of a gubernatorial veto; and Matter of Bradford Cent. School Dist. v Ambach (56 NY2d 158, 165 [1982]), where as a further ground to grant standing to a local School Board to challenge a determination of the State Education Commissioner granting permanent certification to a teacher in the school district, the Court (relying on Boryszewski v Brydges, 37 NY2d 361, supra) concluded that if the School Board could not challenge the Commissioner’s decision, “no judicial scrutiny of that determination will be available”.
With the foregoing principles in mind it is clear that if plaintiff were suing as a taxpayer he would have standing to challenge any appropriation of money under article 7-A of the State Finance Law. Further, any State employee whose pay increase was vetoed by the Governor would have standing as an aggrieved party under common-law principles.
While the question presented by the instant motion as to the standing of the plaintiff as Speaker and a member of the Assembly to challenge the 55 vetoes may not be specifically answered by the foregoing authorities, the cases have clearly demonstrated a loosening of the standing restrictions, particularly in situations where a failure to permit standing could have the effect of constructing an insurmountable wall against any judicial review of a challenged act.
The developments in 1998 that led to the adoption of a State budget were unique. In prior years, the budget was generally agreed upon as a result of tripartite negotiations among the Governor and the leadership of the two houses of the Legislature. Last year, however, the Legislature failed to come to an agreement with the Governor on many budget items and consequently the Legislature (partially through the employment of a conference committee consisting of members of both houses) enacted a budget that did not have the imprimatur of the Governor. Consequently, there ensued the numerous vetoes which are the subject of this action, as well as vetoes of over $1 billion of appropriations contained in “appropriation bills”.
Some of the type of challenged items vetoed in the so-called “non-appropriation bills” did the following: (i) directed how monies made available in appropriation bills to various State agencies, local governments and other entities are to be expended; (ii) directed the source of funding for certain projects; (iii) authorized the transfer of certain positions and required that a certain State office maintain a specified mini *322 mum number of employees; and (iv) authorized the transfer of certain surplus land and set a maximum sales price therefor.
Initially the court observes that what makes this case strikingly different from both Matter of Posner v Rockefeller (26 NY2d 970, supra) and Raines v Byrd (521 US 811, supra) is that here plaintiff is not (as were the legislators in those cases) seeking to obtain a result in a courtroom which he failed to gain in the halls of the Legislature. Rather, here, plaintiff is seeking to uphold the acts of the Legislature against a claimed unconstitutional employment of the veto power.
While some of the vetoes may be challengeable in a taxpayer suit, many of them would neither provide a basis for such litigation nor grounds for a plaintiff to show that he or she is aggrieved thereby. Consequently, the legality of the actions could entirely avoid judicial scrutiny if standing is denied to the plaintiff. The legal issue as to the propriety of the Governor’s actions asserted herein is novel and a member of the Legislature and particularly the Speaker, who may well have to face a similar legal issue in future budget negotiations, is an appropriate party to present the question to the court.
Regarding the related claim of lack of capacity, which “concerns a litigant’s power to appear and bring its grievance before the court” (Community Bd. 7 v Schaffer, 84 NY2d 148, 155 [1994]), it is noted that in none of the above-cited cases involving plaintiff legislators has it ever been held that a legislator lacks capacity to bring an action and the court finds that such defense totally lacks merit.
Finally, defendant fails to set forth a valid basis to transfer venue to Albany County. It is undisputed that the action was appropriately commenced in New York County as the County in which plaintiff resides. Furthermore, at oral argument, the parties agreed that the request for a change of venue did not involve the convenience of any witnesses, but was an application directed solely to the discretion of the court. In light of the fact that there is no claim of inconvenience, and there is no specific CPLR venue provision applicable to the Governor, who maintains a principal office here, it is appropriate for this matter to proceed in this County. In Matter of Posner v Rockefeller (33 AD2d 683 [1st Dept 1969], affd 25 NY2d 720 [1969]), the action against the Governor and others was transferred to Albany County only because the State Comptroller was a party defendant and any action against that official is required, under CPLR 506 (b) (2), to be commenced in that County.
*323 Accordingly, the motion to dismiss the action or, in the alternative, to transfer venue to Albany County, is denied in all respects.
The cross motion of plaintiff for summary judgment pursuant to CPLR 3211 (c) is held in abeyance and adjourned to February 19. Defendant is granted until January 29 to serve an answer to the complaint and to the motion for summary judgment and to serve any cross motion. Any reply papers of plaintiff must be served by February 12.