COBB, Chief Justice
(concurring specially).
I concur in the main opinion. I write specially to note that I also believe that this case became ripe for judicial review on separate bases that are resolved on a purely legal, as opposed to factual, analysis. *809 Although these points of legal analysis represent issues of first impression of the jurisprudence of this State, they find strong support in the majority of American jurisdictions.
First, I believe that the legislators suffered a legally cognizable injury the moment Governor Riley vetoed § 4 of House Bill 328 (“H.B. 328”)- Assuming, only for the purpose of analyzing the ripeness issue, that Governor Riley’s veto was constitutionally invalid, that veto invalidated the lawful votes of the legislators the moment it was entered. A similar situation was addressed in Silver v. Pataki, 96 N.Y.2d 532, 755 N.E.2d 842, 730 N.Y.S.2d 482 (2001). In that case, the speaker of the State Assembly for the State of New York brought an action in his official capacity seeking a judgment declaring the governor’s exercise of his line-item veto power with respect to “non-appropriation”[3] bills' constitutionally invalid. Although couched in terms of challenging the speaker’s standing or “capacity to sue,” the governor’s motion to dismiss asserted that the speaker lacked the legal capacity to bring the action because the speaker had suffered no injury, i.e., the speaker’s case was not ripe for judicial review because the speaker had suffered no legally cognizable injury. The court’s analysis makes this point as follows:
“A plaintiff has standing to maintain an action upon alleging an injury in fact that falls within his or her zone of interest. ‘The existence of an injury in fact — an actual legal stake in the matter being adjudicated — ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute “in a form traditionally capable of judicial resolution” ’ (Society of Plastics Indus. v. County of Suffolk, 77 N.Y.2d [761,] 772[, 573 N.E.2d 1034, 570 N.Y.S.2d 778 (1991) ] [citation omitted] ).
“Cases considering legislator standing generally fall into one of three categories: lost political battles, nullification of votes and usurpation of power. Only circumstances presented by the latter two categories confer legislator standing (see, e.g., Coleman v. Miller, 307 U.S. 433 [ (1939) ] [vote nullification]; Dodak v. State Admin. Bd., 441 Mich. 547, 495 N.W.2d 539 [ (1993) ] [usurpation of power belonging to legislative body]; cf., Raines v. Byrd, 521 U.S. 811 [ (1997) ] [no standing to challenge lost vote]; Matter of Posner v. Rockefeller, 26 N.Y.2d 970[, 311 N.Y.S.2d 15, 259 N.E.2d 484 (1970) ] [same]).”
96 N.Y.2d at 539, 755 N.E.2d at 847, 730 N.Y.S.2d at 487. In considering whether the speaker had suffered an actual injury, the Silver court then noted:
“Here, plaintiff as a Member of the Assembly won the legislative battle and now seeks to uphold that legislative victory against a claimed unconstitutional use of the veto power nullifying his vote. If plaintiffs allegations are correct, and at this point in the litigation we must assume they are, the vetoed provisions were improperly invalidated and should be in effect. Such a direct and personal injury is clearly within a legislator’s zone of interest and unquestionably represents a ‘ “concrete and particularized” ’ harm (Raines [v. Byrd], 521 U.S. *810 [811], at 819 [ (1997) ] [citation omitted]; accord, Dennis v. Luis, 741 F.2d 628, 630-631 [3d Cir. (1984) ]; Fordice v. Bryan, 651 So.2d 998, 1003 [Miss. (1995) ]; Hendrick v. Walters, 865 P.2d 1232, 1236-1238 [Okla. (1993)]). As [the] Supreme Court noted, plaintiff is not ‘seeking to obtain a result in a courtroom which he failed to gain in the halls of the Legislature’ (179 Misc.2d 315, 322, 684 N.Y.S.2d 858 [ (1999) ]).”
96 N.Y.2d at 540, 755 N.E.2d at 848, 730 N.Y.S.2d at 488. With respect to the idea of “capacity to sue,” the Silver court noted that “[n]o other jurisdiction in the nation has held that an individual legislator lacks capacity to sue.” 96 N.Y.2d at 539 n. 4, 755 N.E.2d at 847 n. 4, 730 N.Y.S.2d at 487 n. 4. Thus, in a situation precisely like the situation in this case, where the legislators assert that the Riley defendants injured them when Governor Riley entered his veto by nullifying their votes on a bill that had passed, the Silver court held that such a veto by a governor was an actionable injury. Moreover, the court in Silver relied upon precedent from the United States Supreme Court:
“As a Member of the Assembly who voted with the majority in favor of the budget legislation, plaintiff undoubtedly has suffered an injury in fact with respect to the alleged unconstitutional nullification of his vote sufficient to confer standing. The circumstances here are analogous to those present in Coleman v. Miller, 307 U.S. 433 [(1939)]. In Coleman, the United States Supreme Court recognized the standing of 20 members of the Kansas State Senate challenging that body’s ratification of an amendment to the Federal Constitution when a 20-20 deadlock was broken by the vote of the State’s Lieutenant Governor. The Supreme Court determined that the Senators had ‘a plain, direct and adequate interest in maintaining the effectiveness of their votes’ (id., at 438); see also, Kennedy v. Sampson, 511 F.2d 430, 436 [D.C.Cir. (1974) ] [no more essential interest could be asserted by a legislator than to vindicate the effectiveness of his vote]. The Court explained that the Senators’ votes had been held for naught because, if their allegations were correct, the amendment would not have been ratified. Thus, the legislators were sufficiently aggrieved — suffering an injury in fact — to allow them to maintain the action.”
96 N.Y.2d at 540-41, 755 N.E.2d at 848-49, 730 N.Y.S.2d at 488-89 (footnote omitted).
I find the analysis in Silver persuasive. In light of that analysis I conclude that the legislators here suffered a legally significant injury that gave rise to a definite and concrete controversy sufficient to ensure both that they had standing to sue and that the issue they presented was ripe for review under Alabama law at the time Governor Riley vetoed § 4. See Ex parte Bridges, 925 So.2d 189 (Ala.2005); Baldwin County v. Bay Minette, 854 So.2d 42 (Ala.2003). At the time Governor Riley exercised that veto, its effect was to invalidate votes the legislators had cast on a bill that had been passed by the Alabama Legislature. Because the legislators have “ ‘a plain, direct and adequate interest in maintaining the effectiveness of their votes’” and because Governor Riley’s veto impaired that interest, this case is ripe for judicial review in our courts.
In addition to Silver and the various state and federal cases it discusses for the proposition that this case is ripe for our review because the legislators’ otherwise valid votes were invalidated by Governor Riley’s veto, other cases have adopted a similar rationale for holding that judicial review of a governor’s use of a line-item veto is appropriate. For example, in State *811 ex rel. Ohio General Assembly v. Brunner, 114 Ohio St.3d 386, 872 N.E.2d 912 (2007), the Supreme Court of Ohio considered a case in which the Ohio General Assembly, the president of the Senate, and the speaker of the House of Representatives petitioned for a writ of mandamus to order the Ohio Secretary of State to treat a bill that had passed the legislature as a duly enacted law for purposes of her statutory duties, when a successor governor attempted to veto the bill after his predecessor had filed the bill in the office of the Secretary of State. As did the New York court in Silver, the Ohio court in Brunner cited Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), to determine that the attempted nullification of the legislators’ votes by the governor’s veto was a legally cognizable injury that established their standing to sue and, based on law analogous to that of this State, see Bridges and Baldwin County, supra, caused their legal action to be ripe for judicial review. More significantly, the court in Brunner discussed the application of Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997):
“The secretary of state cites Raines v. Byrd (1997), 521 U.S. 811, 830, 117 S.Ct. 2312, 138 L.Ed.2d 849, in support of her request that this court hold that the Senate president and Speaker of the House lack standing. In Raines, the United States Supreme Court held that individual members of Congress lacked standing to challenge the constitutionality of the Line Item Veto Act because they ‘do not have a sufficient “personal stake” in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing.’ Id.
“Raines, however, is not controlling. The congressional members in Raines challenged the constitutionality of legislation that had been passed by Congress, which they had merely voted against. Raines, 521 U.S. at 814, 117 S.Ct. 2312, 138 L.Ed.2d 849.
“Instead, this matter is akin to Coleman [v. Miller, 307 U.S. 433 (1939) ], which has been interpreted as standing ‘for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.’ Raines, 521 U.S. at 823, 117 S.Ct. 2312, 138 L.Ed.2d 849. In this case, the Senate president and the Speaker of the House voted for the bill at issue, there were sufficient votes to pass the bill, and their votes would in effect be nullified by the governor’s veto and the secretary of state’s refusal to treat the bill as a validly enacted law. Therefore, we hold that the Senate president and the Speaker of the House, as legislators who voted for the bill, have the requisite standing to bring this mandamus action to prevent their votes from being nullified.”
114 Ohio St.3d at 390-91, 872 N.E.2d at 918.
Brunner further supports the conclusion that this case is ripe for review. Brunner makes clear that Raines is also supportive of this conclusion in that Raines establishes that had the members of Congress had their votes nullified as to a bill that had passed, i.e., had they voted in favor of the bill, they would have had the requisite standing, and their cause would have been ripe for review. Cf. Bennett v. Napolitano, 206 Ariz. 520, 81 P.3d 311 (2003).[4]
Also supporting the conclusion that the legislators’ case is ripe for review are the *812 cases of South Carolina Coin Operators Ass’n v. Beasley, 320 S.C. 183, 464 S.E.2d 103 (1995), and State ex rel. Sundby v. Adamany, 71 Wis.2d 118, 237 N.W.2d 910 (1976). In Beasley, the Supreme Court of South Carolina considered a challenge by the petitioner Coin Operator’s Association of the governor’s line-item veto striking parts of a section of an appropriations bill relating to the regulation of video slot machines. The court held, among other things, that the petitioner’s challenge presented a justiciable controversy that was ripe for judicial determination even though the South Carolina General Assembly had not yet attempted to override the veto.
In Sundby, the Supreme Court of Wisconsin considered a taxpayer’s action seeking a judgment declaring that the governor’s veto of portions of an appropriations bill was unconstitutional. The court in Sundby held that the taxpayer had standing, and the case was therefore justiciable and ripe for review, because “the respondent secretary of the department of revenue is administering the challenged sections of the appropriation bill as if the partial vetoes of the governor are valid and effective.” 71 Wis.2d at 124, 237 N.W.2d at 913. Thus, the governor’s veto, if exercised in violation of the state constitution, would directly affect the taxpayer’s pecuniary interests. The rationale of Sundby also provides additional support.
As discussed in the main opinion, a dis-positive factor for concluding that this case is ripe for adjudication is the fact that State agencies have already begun to calculate them budgets as if Governor Riley’s veto of § 4 was valid. Assuming, only for the purposes of the ripeness analysis, that Governor Riley’s veto was not valid, the effect of ignoring this present issue until a shortfall, which is already extremely probable, becomes a certainty will result in a catastrophic reduction in the operating budgets of nonprotected State agencies with the likely result that essential State services will be impaired or halted completely. The effect on the pecuniary interests of the legislators as individual taxpayers is at least as profound as the effect on the taxpayer’s pecuniary interests in Sundby. I believe that the courts of this State can and should address this issue as expeditiously as possible.

. The Silver court noted that “[t]he term non-appropriation’ bill is not found in the [New York] Constitution. These bills contain programmatic provisions and commonly include sources, schedules and sub-allocations for funding provided by appropriation bills, along with provisions authorizing the disbursement of certain budgeted funds pursuant to subsequent legislative enactment.” 96 N.Y.2d at 535 n. 1, 755 N.E.2d at 845 n. 1, 730 N.Y.S.2d at 485 n. 1.

. In Bennett, four legislators, the president of the Senate, the speaker of the House, and the majority leaders of both chambers, brought an action to the Arizona Supreme Court chai- *812 lenging the governor's certain line-item vetoes of provisions from four bills that constituted the state's operating budget. The challenged veto struck certain budget reductions that would have otherwise been required of particular state agencies in their operations. In Bennett, the court held that the legislators lacked standing to sue based on reliance on Raines, supra, after concluding that the legislators in their case were more akin to the legislators in Raines. The court in Bennett determined that the effectiveness of the legislators' votes in their case was not affected by the governor's vetoes and stated: "[Tjhere is a vast difference between the level of vote nullification at issue in Coleman and the abstract dilution of institutional legislative power that is alleged here.” 206 Ariz. at 526, 81 P.3d at 317. Under those circumstances the court in Bennett found no particularized injury sufficient to vest standing in the legislators.